(No. 14613.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH BODKIN *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1922—Rehearing denied October 6, 1922.*

1. CRIMINAL LAW—*when extorting money by threats of prosecution constitutes robbery.* Extorting money by threats of prosecution will amount to robbery if the threat to accuse, arrest or prosecute is supplemented by force, actual or constructive.

2. SAME—*when evidence is sufficient to prove robbery by putting in fear of physical injury.* Evidence that the defendants called upon their victim at his room and demanded money of him on the pretext that they represented a "gang" whose orders they were carrying out is sufficient to sustain a charge of robbery of the money which he was induced to give them, where the victim testifies that he feared physical injury from the men if he refused.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

CHARLES E. ERBSTEIN, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, ALVA L. BATES, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error, Joseph Bodkin and Frank Brissa, were indicted in Cook county for the crime of robbery while armed with a dangerous weapon, to-wit, a revolver. The jury brought in a verdict that plaintiffs in error were guilty of robbery but found from the evidence that at the time of the commission of the robbery they were not armed with a dangerous weapon. On this verdict they were sentenced by the criminal court of Cook county to the penitentiary under an indeterminate sentence and judgment was entered accordingly. From that judgment this writ of error has been prosecuted.

The evidence shows that the prosecuting witness, John Skworchinsky, had been a saloon-keeper in Chicago, and he testified that after the prohibition amendment he kept a soft drink and lunch parlor in the same locality, he and his family living in a flat above his place of business; that when up-stairs on the evening of January 17, 1921, he heard a rapping on the door; that upon opening it he was confronted by plaintiff in error Bodkin, who exhibited a star and said to him, "I am a government," at the same time taking a revolver from his coat pocket and shoving it into one of his overcoat pockets; that Bodkin accused him of selling whisky to drivers and threatened to take him to the Federal building and demanded $200 in order to keep him out of trouble; that witness stated, in reply, that there was no reason for him paying any money,—that he had done no wrong. He further testified that while talking to Bodkin he saw plaintiff in error Brissa standing down the hall-way a few feet, and said to him, "What did you do here? you just got some money; you come back;" that Brissa replied, "I cannot help that, John; that [indicating Bodkin] is the captain of the gang;" that he told Brissa that he did not have any money, and Brissa said, "Never mind about that; come across." The witness further testified that he brought $220 from another room, put $200 on the table in front of Bodkin and kept $20 in his hand; that Bodkin asked witness whether he had any booze, and when witness replied that he had none, Bodkin grabbed the $20 out of witness' hand, put it on top of the $200 lying on the table, and then put the $220 in his pocket and went down-stairs. The evidence tends to show that Brissa had been in Skworchinsky's place of business on January 5, 1921, and with two other men started to search the place, and Brissa made Skworchinsky go up-stairs, where Mrs. Skworchinsky was; that Brissa later found a little bottle of whisky in a drawer in Skworchinsky's place which the latter was keeping for his own use, and told him that he would have him arrested

by the government for possessing and selling whisky, and that Skworchinsky gave Brissa at that time $300 for squaring the matter without further trouble. Skworchinsky's wife corroborated the material points of her husband's testimony as to Bodkin coming to him and that the money was brought out by Skworchinsky and that Bodkin took it.

Bodkin, testifying in his own behalf, practically admitted that he had falsely told Skworchinsky when he came there that he was a government man and showed him a government star, and that Skworchinsky gave him $200 but he did not take the $20. Brissa, testifying in his own behalf, stated that while he had been in Skworchinsky's place of business early in January and received $300 from him at that time, he did not know whether Bodkin got any money on January 17 or not, and that he was not acting in concert with Bodkin on January 17. They both testified that Bodkin did not show a revolver to the prosecuting witness or have one with him on January 17.

Hugh McCarthy, a witness for the People, testified that he was a police officer and arrested plaintiffs in error about a week after the alleged robbery, and that he found a revolver, which was offered in evidence at the trial, on Bodkin.

Counsel for plaintiffs in error's chief argument is that the verdict and judgment are against the evidence, and that the evidence found in the record is not sufficient rightly to convict them of robbery. It is undoubtedly the law, as argued by counsel for the plaintiffs in error, that extorting money by threats of prosecution will not amount to robbery save in the instance of threats of prosecution for an unnatural crime,—*crimen innominatum;* but it is also the law, as held in *Long* v. *State,* 12 Ga. 293, that "if such threats or accusations are accompanied with force, actual or constructive, and the property or money is given up in consequence of this force, the transaction is robbery." It has been held in numerous cases that if the threat to accuse, arrest or prosecute is supplemented by force, actual or con-

structive, it is sufficient to constitute robbery. (See *Mc-Cormick* v. *State,* 26 Tex. App. 678; *Williams* v. *State,* 55 S. W. (Tex.) 500; *Bussey* v. *State,* 71 Ga. 100; *Williams* v. *State,* 51 Neb. 711; *Sweat* v. *State,* 90 Ga. 315.) Again, it was said in *State* v. *Parsons,* 12 Ann. Cas. 61, (44 Wash. 299,) that it is generally held "that whenever the elements of force or putting in fear enters into the taking and is the cause that induces the owner of the property to part with it the taking in robbery, no matter how slight the act of force or the cause creating the fear may be nor by what other circumstances the taking may be accompanied." It was said in *Horn* v. *State,* 89 Tex. Crim. 220: "If under the circumstances and conditions surrounding the transaction he has a reasonable belief that he may suffer injury unless he does comply with the robber's request, the 'fear' required by law is present." (See, also, to the same effect, note to *Brown* v. *Commonwealth,* 135 Am. St. Rep. (Ky.) 471, and cases there cited.) In the early English case of *Hughes and Wellings case,* 1 Lewin's C. Cas. 300, there was an indictment for robbery, and it appeared that the two prisoners, with others, "hung around the prosecutor's person in the streets of Manchester and rifled him of his watch and money. It did not appear, however, that any force was used or any menaces, but they so surrounded him as to render all attempts of resistance hazardous, if not vain." In deciding the case the court said: "In order to constitute robbery there must be either fear or menaces. If several persons so surround another as to take away the power of resistance, this is force." In Russell on Crimes (vol. 2, 1910 ed. 1137, 1138,) this last case is quoted with approval, and the author says (p. 1137): "The extortion of property by fear is robbery though the property be taken as a colorable gift. So that if a man, whether with or without an offensive weapon, but with such circumstances of terror as indicate a felonious intention, asks alms from a person, who gives to him through

a fear of violence, it will be robbery." The same author says (p. 1138): "It is enough if the fact be attended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the safety of his person."

In the present case it seems obvious that when Bodkin demanded $200 at the entrance of the up-stairs room Brissa was almost at his elbow. It is clear that the jury relied on the testimony of Skworchinsky, as well as that of his wife, that both Bodkin and Brissa were in the actual presence of Skworchinsky at the time Bodkin demanded the money, and that Brissa said, in answer to Skworchinsky's question, he could not help him,—that Bodkin was the "captain of the gang" and that he should "come across." Skworchinsky's testimony is also to the effect that at the outset Bodkin, when he announced he was a government officer, took a revolver from his coat pocket and put it in his overcoat, and that thereafter the witness saw the "top handle" of the revolver projecting from the pocket of the overcoat and that Bodkin kept his hand in the pocket. It is true that the jury found that the plaintiffs in error were not armed with a dangerous weapon. This doubtless eliminates from this case the right of the court to assume the actual existence of a revolver in Bodkin's possession, but it does not eliminate the hypothesis that Skworchinsky may have believed what he saw was a revolver nor contradict his testimony that Bodkin kept his hand in the overcoat pocket. It is manifest that the jury believed Skworchinsky's testimony in other respects except as to Bodkin having a revolver. The jury may well have concluded that Skworchinsky was misled by these appearances as to the actual fact of a revolver being in Bodkin's pocket, and whether the revolver was actually there or Skworchinsky merely believed it there from Bodkin's actions, the jury were justified in concluding that he thought the revolver

was there.   As was said by Lord Mansfield in *Donolly's case*, 2 East's P. C. 715 : Even though it is clear that no actual damage to the owner exists, "if a tinder box or a candle were used instead of a pistol it would be still robbery."   Even though the court disregard altogether in this record the testimony of Skworchinsky with relation to the revolver the case still presents the element of threatened bodily harm.   The demand was made in such peremptory terms, with two men ready to support it, that Skworchinsky had reasonable ground for believing that physical means would be used for its enforcement, and it is unnecessary, after this conclusion, to argue that Skworchinsky, in giving up the money, was moved by threats of prosecution, as the all-important fact is disclosed by the record that before he surrendered the money he was apprised that the men were not Federal agents.   Brissa had told him that he (Brissa) could not help Bodkin's being there,—that Bodkin was the "captain of the gang."   It was apparent, therefore, to the prosecuting witness that he did not have to do with Federal officers but with a "gang."   The motive which moved him could not have been fear of exposure and prosecution by the Federal officers.   His impelling motive in giving the money was fear of physical harm, for he says in his testimony, "I knew if I started something Bodkin would kill me."   The fact that when he surrendered the money he knew that the men were not Federal agents makes the case simply that of a demand for money accompanied by a show of overpowering force, and conditions here, independently of any belief on the part of Skworchinsky that Bodkin was armed with a revolver, were such as to cause a fear of personal injury.   This brings the case clearly within the reasoning of this court in *Steward* v. *People*, 224 Ill. 434, where the court said (p. 443) : "The fear 'must be of such a nature as in reason and common experience is likely to induce a person to part with his property against his will, and to put him, as it were, under the temporary

suspension of the power of exercising his will through the influence of the terror impressed.' "

The conclusion on this record that the prosecuting witness was so put in fear as to make plaintiffs in error guilty of the crime of robbery obviates any necessity for the court determining whether the snatching of the two $10 bills from Skworchinsky's hand would make plaintiffs in error guilty of robbery.

We find no reversible error in the record, and the judgment of the criminal court of Cook county will be affirmed.

*Judgment affirmed.*