People of the State of Illinois, Plaintiff-Appellee, v. William Denman, Defendant-Appellant.

Gen. No. 50,491.

First District, First Division.

February 18, 1966.

Rehearing denied March 7, 1966.

Richard J. Troy, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is an appeal from a bench trial robbery conviction. Defendant was sentenced to a term of not less than two years nor more than ten years in the Illinois State Penitentiary. He appeals on the grounds that the state failed to prove that the taking of the property in question was done by the use of force as set forth in the statute (Ill Rev Stats 1965, c 38, § 18–1) and that the state failed to establish the identity of the defendant as the person who committed the crime. The following evidence was adduced at the trial.

Barbara Reavely, the state's only witness, testified that on December 22, 1962, at 6:30 in the morning, she was awakened by two men in her bedroom standing beside her bed. Her husband was not at home. Only she and her eight-month-old baby were there. There was a night light on in the bedroom and some light coming in from the outside. One of the men, Robert Long, showed her a policeman's badge and said that he was from the State's Attorney's office. Following Long's command, she put on a robe and went into the living room. Long went back to the bedroom and began searching it while the other man, whom she identified as the defendant, stood watching her. The defendant Denman was five or six feet from her for the full time he was there. The shades were up in the living room and, because "day was breaking," light came into the living room from the outside. When Denman shouted "Don't forget the bathroom," Long began to search there. When she asked Long how he got in the apartment, he said "Shut up, bitch. Where is the money?" Whereupon he pulled out a gun.

307

During one of the conversations she had with Long, he told her that he had her husband and her keys, and that was how he got into the apartment. The men were there about twenty minutes. When they left she found that the baby's mattress was turned up and all the covers were disturbed. Her coin purse with about $15 was missing. She did not call the police because Long had told her he was going to phone that evening. Subsequently, she had some phone conversations with Long wherein he attempted to force her to raise a $25,000 ransom for the safe return of her husband. This particular maneuver by Long resulted in his arrest.

In February of 1963, Barbara Reavely looked at about fifty pictures at police headquarters and recognized one as being that of William Denman, the defendant. On February 15, 1963, she identified him in a police lineup as being the other man who robbed her on December 22, 1962.

Upon cross-examination Barbara Reavely stated that Long displayed the gun only once; that neither man tried to molest her; that about six or seven men were in the lineup when she picked out the defendant; that she told the police after the incident that the man who accompanied Long was 5' 8", light complexioned and had sandy hair; that she could see the defendant "very well" since it was "daylight" and he stood only five or six feet from her for about twenty minutes; that the picture of Denman that she saw prior to picking him out of the lineup was a "good likeness" of the man in her apartment, and that she recognized him immediately.

Counsel for defendant then introduced into evidence the description of the men given to the police by Barbara Reavely after the incident. The man with Long was described as being a 5' 8" male Negro of light complexion. There was no mention of sandy hair or any other particulars.

The state pointed out for the record that Denman is a 5′ 9″ light complexioned Negro with sandy hair.

Defendant testified that at 6:30 a. m., on December 22, 1962 he was at his sister's house (Naomi Denman) and that he and his wife slept there the night of December 21 and the early morning of December 22 because he had been painting rooms at the house. He got up about 5:30 a. m. on December 22, made coffee, and awakened his sister Naomi who left for work at about 6:00 a. m. and was not there when he left. He and his wife then went to another sister's house. This account of his activities was corroborated by his wife. Naomi testified she saw defendant painting at her house on December 21 when she left for work at 6:00 p. m. She returned about 2:15 or 2:30 a. m. and slept in the living room. Her brother woke her up when he left at 8 or 8:30 a. m.

We find no merit to defendant's contention that there was not sufficient force shown to constitute robbery. Robbery is defined by statute as follows:

> A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force. (Ill Rev Stats 1965, c 38, § 18–1.)

 In the instant case, two men surprised the victim in her bedroom at dawn. While searching her apartment, one of the men brandished a gun, told her to "Shut up, bitch," and told her they had her husband. They began going through the house after asking her where the money was. Under such circumstances it was reasonable for her to believe there was a threat of the imminent use of force and that force would be used to overcome resistance.

Defendant argues, however, that at no time did she testify that she was in fear of her personal safety or aware of the fact that the men were not bona fide police

309

officers. Therefore, defendants contend, the crime here was theft by deception under Ill Rev Stats 1965, c 38, § 16–1(b). In other words, the defendant argues that the removal of Mrs. Reavely's property was accomplished through the device of posing as policemen. Although the mere pretense of legal authority, for example, extortion by threats of prosecution, will not constitute robbery where there is no showing of force, if a threat to accuse, arrest, or prosecute under such pretense of authority is supplemented by force, actual or constructive, it is sufficient to support a charge of robbery. People v. Bodkin, 304 Ill 124, 136 NE 494 (1922). See 27 ALR 1299 for other cases on this subject. In Bodkin, the court upheld a conviction of robbery where defendant and another went in the evening to the rooms of the prosecuting witness, who conducted a soft drink parlor and lunchroom, exhibited a government star, claimed to be government men, and accused the witness of illegally selling liquor. They threatened to take him to the Federal building unless he paid $200. The reviewing court held that, although the jury had determined that the defendant and his partner did not display a gun, as alleged by the state, the circumstances were such that the victim had reasonable grounds for believing that physical means would be employed to enforce the threat. The Bodkin case, as illustrating the threat of the imminent use of force, was explicitly referred to in the committee comments to the statutory provision on robbery. See SHA ch 38, § 18–1, Committee Comments. We consider the case dispositive of the question of force here.

 We likewise find no merit in defendant's contention that the state failed to establish the identity of the defendant as the person who committed the crime. The state's witness, Barbara Reavely, was five or six feet from the defendant for about twenty minutes in the "daylight" as she described it. The testimony of one

witness alone, if it is positive and the witness credible, is sufficient to convict even though the evidence is contradicted by the accused. People v. Miller, 30 Ill2d 110, 113, 195 NE2d 694 (1964). The fact that a general description was given to the police, and then embellished at the trial, is not sufficient to shake the identification where the trial court is convinced that the witness had a good opportunity to observe the defendant and the witness is generally forthright and candid. See People v. Young, 65 Ill App2d 185, 213 NE2d 146 (1965). In People v. Williams, 12 Ill2d 80, 145 NE2d 29 (1957) the court upheld a conviction of armed robbery where the only witness was a bus driver who observed the defendant as he was boarding the bus. The witness had no opportunity to further observe the defendant during the robbery since he was forced at gunpoint to look in the other direction. In that case the court noted that the defendant's alibi involved some contradiction. In the instant case the lower court placed no credence in defendant's alibi, finding that testimony regarding it was contradictory.

Defendant was accorded a fair hearing. The trial judge, as trier of the facts, found the proof sufficient according to law, to establish the crime and defendant's involvement therein. We find no reason to set it aside. The judgment of conviction is affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.