THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICKY STEWART *et al.*, Defendants-Appellants.

First District (5th Division)   No. 76-1147

Opinion filed October 7, 1977.

James Geis and Ira A. Moltz, both of State Appellate Defender's Office, of Chicago, for appellants Ricky Stewart and Cornelius Newbern.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and John M. Kalnins, Assistant Public Defenders, of counsel), for appellant Bernard Jackson.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants, Ricky Stewart, Cornelius Newbern and Bernard Jackson, were indicted for having committed on May 24, 1974, the offenses of armed robbery and robbery. (Ill. Rev. Stat. 1973, ch. 38, pars. 18—2 and 18—1.) Stewart and Newbern were also indicted for having committed on May 28, 1974, and June 1, 1974, the offense of intimidation. (Ill. Rev. Stat. 1973, ch. 38, par. 12—6(a-1).) After a jury trial defendants were found guilty of the charges. Stewart and Newbern were each sentenced on the armed robbery and intimidation convictions. The sentences were ordered to be served concurrently. Jackson was sentenced only on the armed robbery conviction. No sentences were imposed for robbery.

On appeal, defendants contend: (1) they were not proved guilty beyond a reasonable doubt of armed robbery or robbery, since the requisite force and taking were separated by a period of two or three hours; (2) the trial court erred in granting the State's motion in limine precluding evidence of a 24-year-old conviction of the State's witness; and (3) the judgments of conviction for robbery should be vacated since the alleged robbery arose out of the same acts which gave rise to the armed robbery convictions.

There is ample authority to support vacature of the robbery convictions for the reason stated by defendants. (See *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.) Moreover, the State concedes this argument on appeal. Accordingly, we vacate the judgment of conviction for robbery as to each defendant. In neither their brief on appeal nor in oral argument before this court do defendants Newbern and Stewart urge error in their intimidation convictions or the sentences imposed thereon. Points not argued or briefed on appeal are waived. (Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7); see, *e.g., People v. Mackins* (1974), 17 Ill. App. 3d 24, 308 N.E.2d 92, *cert. denied* (1975), 419 U.S. 1111, 42 L. Ed. 2d 808, 95 S. Ct. 786.) Accordingly, we dismiss the appeal as to the offense of intimidation. Therefore, we here consider only the armed robbery convictions.

The three defendants were tried on the foregoing charges in a single trial. Six witnesses testified in the State's case in chief.

Charles Winters testified for the State. He is in the beauty supply distributing business and owns two stores on the south side of Chicago. His wife operates a beauty parlor at one of the locations. Winters met defendant Jackson in November 1973 and defendant Newbern in May 1974. After speaking with Newbern in his store at that time, Winters related the conversation to his wife. Although they decided to comply with certain orders given by Newbern, Winters thereafter contacted and spoke with police officers in the gang crimes unit of the Chicago Police Department and with F.B.I. agents. Both agencies told Winters that they could not help him. Later that same month, he received a telephone call from Newbern. The latter said that he needed a thousand dollars and that if Winters did not comply he would burn down his store and harm his parents. Winters told Newbern that he had already given him "all he had."

On May 24, 1974, at about 1 p.m., the three defendants came into one of Winters' stores. Mrs. Winters and two employees were in the beauty parlor in the front of the store. The defendants sought out Winters who was lying down in the back room. Jackson carried a brown paper bag, and the other two defendants had guns. They told Winters not to get up, and Newbern and Stewart put guns to each side of his head. They cursed and threatened him. Jackson took a jar of white liquid out of the bag and threw a portion of the liquid on some metal Afro picks. The picks burned. Jackson told him that the liquid was acid and would be used to disfigure his face and his entire family family if he did not cooperate. Winters said he would do anything. The defendants then told him that they wanted a thousand dollars by 4 p.m. that day, and that when Stewart called, Winters was to bring the money to them at a certain location. The three defendants then left. They had been with Winters for about 15 minutes.

Winters immediately related the incident to his wife. He told her of the threats to the family and showed her the burnt Afro picks. He told her that they had to give defendants the money. He gathered a thousand dollars from his two stores and from his wife's funds.

At about 3 p.m. Winters saw Stewart pass by the store about four or five times on each side of the street. Eventually Stewart entered and asked Winters whether he had the money. Winters replied that he did, and Stewart ordered that they leave together. The two men walked out of the store and around the corner to the named location where Winters handed Stewart an envelope containing the money. He asked Stewart where Newbern was because he had understood the money was to be delivered to Newbern. Stewart replied that Newbern was nearby.

Winters identified each of the defendants from a group of photographs shown him by the police gang crimes unit. Thereafter, he identified each defendant at a lineup.

Winters also testified concerning events from May 27, 1974, through June 1, 1974, which relate solely to the offense of intimidation and are not relevant to this review.

Prior to defense counsel questioning Winters on cross-examination, the State presented a motion in limine asking that the defense be barred from impeaching Winters with his prior criminal convictions. The State revealed that Winters had a 24-year-old conviction for armed robbery, as well as a 1971 misdemeanor conviction for unlawful use of weapons. After argument by counsel, the trial court granted the State's motion in limine.

On cross-examination Winters was confronted with earlier statements he had made at preliminary hearings. At one hearing he stated that Stewart had come to pick up the money shortly before 4 p.m. on May 24. Winters was also directed to another statement where he testified that Stewart had been accompanied by another man he did not know when Winters handed him the money. In a third statement Winters had testified that Stewart and Newbern had picked up the money from him.

Mrs. Winters testified for the State. She had given Jackson money in the Winters' store in the presence of her husband in December 1973. Her testimony essentially corroborated her husband in that the three defendants went to the back room to see him at about 1:30 p.m. on May 24, and that they remained with him for about 15 minutes. After they left, Winters was nervous and shaking and he told her that the defendants had threatened him and that they wanted a thousand dollars by 4 p.m. She saw the burnt Afro picks. She was frightened. As to the events subsequent to May 24, Mrs. Winters corroborated her husband's testimony of conversations he had with her about the defendants.

The testimony of the other State witnesses is not essential to the issues in this appeal. At the close of the State's case in chief, defendant Stewart presented a motion in limine asking that the State be barred from impeaching him with a 1972 conviction for attempt armed robbery. The motion was denied. Defendants did not testify in their own behalf and presented only one defense witness who testified as to matters not pertinent to this appeal.

OPINION

Defendants first argue that they were not proved guilty beyond a reasonable doubt of armed robbery since the "force" preceded the "taking" by a period of two or three hours. They contend that there was no evidence of force or threats at the second meeting between Winters and Stewart on May 24, and that Winters' motivation in giving up the

money at that time was based upon the threats made approximately two hours earlier.

■■ It is well established that the requisite force which induces a victim of robbery or armed robbery to part with his property must be of such a character as to temporarily suspend the power to exercise his will. (*Steward v. People* (1906), 224 Ill. 434, 79 N.E. 636.) The cause which gives rise to the fear need not be contemporaneous with the taking, but rather may precede it. *People v. Whitley* (1974), 18 Ill. App. 3d 995, 311 N.E.2d 282.

In the case at bar, Winters testified that he was subjected to violent threats in the back room of his store for about 15 minutes between 1 and 1:30 p.m., during which time the defendants held guns and acid to his head and ordered him to give them a thousand dollars by 4 p.m. They also threatened to harm his family and burn down his stores. The impact of what had transpired in the back room at that time was corroborated by Mrs. Winters, who testified that Winters was shaking and nervous when he related what had happened. Winters had previously spoken with police and the F.B.I., and these agencies told him that they could not help. After Winters gathered the money, he saw Stewart "casing" his store before he entered. He gave Stewart the money at the named location upon demand. Stewart had put a gun to his head about two hours earlier. He was told that Newbern was nearby. Newbern too had earlier threatened him with a gun.

■■ ■ Under these circumstances the time span between the defendants' use of deadly force and threats of future use of deadly force, and the taking of Winters' money, was not so long, given the imminent nature of the threats, as to preclude these events from constituting a single, uninterrupted and inseparable incident of terror to satisfy a conviction for armed robbery. Moreover, Winters could have reasonably believed that the gun Stewart had held to his head at 1:30 p.m. was still in his possession at the later time. The use of a dangerous weapon at any point in a robbery, so long as it can reasonably be said to be a part of a single occurrence or incident, may constitute armed robbery. (*People v. Heller* (1971), 131 Ill. App. 2d 799, 267 N.E.2d 685.) We find that defendants were proved guilty beyond a reasonable doubt of armed robbery.

Defendants argue, however, that their conduct on May 24 may support a conviction, if any, for the offense of intimidation under section 12—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 12—6). Newbern and Stewart were convicted of both armed robbery and intimidation. Jackson was convicted only of armed robbery, and no evidence was presented of his participation in the events subsequent to May 24. Evidence of conduct by Newbern and Stewart after that date is

only relevant and material as to the intimidation which allegedly occurred on May 28 and June 1, 1974. The convictions and sentences for intimidation are not before us for review.

■■ Insofar as the events of May 24 are concerned, however, we have concluded above that the conduct of the three defendants supports their convictions for armed robbery. The offense of intimidation is not a lesser included offense of the crime of armed robbery, in that the elements of proof for each crime are different. (*People v. Randle* (1976), 38 Ill. App. 3d 720, 348 N.E.2d 488.) Moreover, the Committee Comments with respect to the crime of intimidation indicate that if the harm has been performed, the accused may be prosecuted and punished for the more serious offense, or for both intimidation and the more serious offense. Ill. Ann. Stat., ch. 38, par. 12—6, Committee Comments—1961, at 552 (Smith-Hurd 1972).

Defendants next argue that the trial court erred in granting the State's motion in limine, which prohibited defendants from impeaching Winters, the State's witness, by reference to a 24-year-old armed robbery conviction.

■■ The applicable Illinois statute permits impeachment of a witness by evidence of a criminal conviction. (Ill. Rev. Stat. 1973, ch. 38, par. 155—1.) In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the Illinois Supreme Court reviewed this statute and held that Proposed Rule 609 adopted by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States should be followed in future cases. Subsection (b) of Proposed Rule 609 cited in *Montgomery* provides an absolute bar for impeachment purposes against the use of convictions more than 10 years old at the time of trial. When Rule 609 was finally adopted, certain language in subsection (a) concerning judicial discretion was omitted. However, it has subsequently been held that other provisions of Rule 609, namely subsection (b) concerning the 10-year time limit, should be followed in future trials. (*People v. Ray* (1973), 54 Ill. 2d 377, 297 N.E.2d 168.) We are bound by that determination.

■■ It has been urged by defendants, however, that the rule in *Montgomery* should not apply to a nondefendant witness. The safeguards of Rule 609, made applicable by *Montgomery*, have been held to apply to witnesses other than the accused. (*People v. Barnett* (1975), 34 Ill. App. 3d 174, 340 N.E.2d 116.) Moreover, the supreme court has recently held that the rule is also applicable to civil actions. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805.) We conclude that those safeguards also apply to prosecution witnesses. Therefore, the trial court properly granted the State's motion in limine.

Consistent with the foregoing, the judgments of conviction of defendants Newbern, Stewart and Jackson for armed robbery and the

sentences imposed thereon are affirmed, and their convictions for robbery are vacated; the appeals of Stewart and Newbern as to the offense of intimidation are dismissed.

Affirmed in part; vacated in part; and dismissed in part.

SULLIVAN, P. J., and WILSON, J., concur.