THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FEIRUZ SZABO, Defendant-Appellant.

First District (2nd Division)    No. 77-146

Opinion filed December 13, 1977.

Elliott Samuels, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Myra J. Brown, and William G. Pileggi, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Feiruz Szabo, was charged by indictment with the offenses of aggravated battery and attempt murder in connection with an assault upon her husband's paramour, Patricia Massey. (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4, 12—4.) Upon a jury trial, defendant was found to be guilty of the offense of reckless conduct. (Ill. Rev. Stat. 1973, ch. 38, par. 12—5.) Judgment was entered on the verdict and defendant was sentenced to serve a term of confinement of nine months in the House of Correction.

From entry of the judgment of conviction defendant appeals contending (1) that the trial court erred in permitting the State to adduce testimony establishing that defendant did not make a statement to police immediately following the assault; (2) that she was prejudiced and deprived of a fair trial by the introduction of certain rebuttal testimony establishing that defendant made inconsistent and incriminating statements to the arresting officers; and (3) that the sentence imposed was excessive.

A review of the evidence adduced at trial reveals that on July 24, 1974, Patricia Massey sustained second and third degree burns over her face, torso, arms and legs as the result of being splattered with a pan of scalding

cooking grease thrown by defendant Feiruz Szabo. Massey testified that prior to the date of the incident she had been acquainted with defendant and her husband, Peter Szabo; that the Szabo's were living separately; and, that she and defendant's husband had become romantically involved in the interim. On the date in question, defendant drove to Massey's home and informed her that defendant's husband was in jail and was asking for Massey.

Together, defendant and Massey drove to defendant's home in Maywood, Illinois, where, according to Massey, defendant invited her to be seated before a kitchen table located approximately four feet from the stove. Massey observed that defendant removed a skillet from the stove and proceeded to heat a quantity of grease. Defendant also received a telephone call during this time.

According to Massey, defendant thereafter called Massey's name and, when Massey looked up in response, defendant threw the skillet of hot grease on Massey's face. Massey testified that defendant cursed and announced that "she was tired of my messing over her and tired of Pete messing over her and she couldn't stand it anymore." Defendant then produced a length of clothesline and proceeded to beat Massey.

Within several minutes, Maywood police officer John Griffin arrived on the scene and discovered the injured Massey. Massey informed the officer, in defendant's presence, that defendant had thrown hot grease on her. Defendant did not respond to this allegation. Griffin testified that he transported Massey to hospital facilities where she was confined for two months. As a result of her injuries, defendant suffered diminished vision and required skin grafts. According to the treating physician, examination of her wounds indicated that Massey's legs were together at the time the burns were inflicted. Officer Griffin returned to defendant's home and effected her arrest.

Defendant testified in her own behalf and admitted having injured Massey but indicated that her actions were in self-defense. According to defendant, Massey entered the kitchen of her own volition while defendant began to cook a meal and was seated so as to overhear a telephone conversation between defendant and her husband. The conversation escalated into a heated argument. Defendant testified that she heard Massey stand up and scream for defendant to grant her husband a divorce while threatening to "kick my [defendant's] ass." Defendant indicated that she reached for the skillet in order to protect herself and, momentarily forgetting that the pan contained hot grease, threw the contents of the pan in Massey's face.

Defendant also testified that she was in shock when the police arrived on the scene but that she subsequently told the arresting officers the "same things" which she told the jury. In rebuttal, the State adduced the

testimony of Officer Griffin to establish that defendant did not inform him that her actions had been inadvertent or in self-defense. On cross-examination by defense counsel, the officer revealed that defendant told him that she had been talking, had become angry and had thrown grease on defendant.

Defendant initially contends that the trial court violated the teachings of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, in permitting the State to elicit testimony establishing that defendant did not make a statement to police immediately following her assault upon Patricia Massey. In this regard and during its direct examination of Officer Griffin, the State adduced the following:

"Q. * * * After the initial remarks that Patricia Massey made to you, did Feiruz Szabo say anything?

A. I don't recall her saying anything."

No objection was raised to this question by defendant.

Defendant subsequently testified in her own behalf that she inadvertently injured Massey while acting in self-defense. On cross-examination, the prosecution inquired as follows:

"Q. Patricia said certain things in front of the officer, Officer Griffin?

A. At that point, I just stood there; I was too messed up about what happened to hear.

* * *

Q. Well, when Officer Griffin arrived at the house, you didn't tell him that she [Massey] was coming at you?

A. I didn't say anything.

Q. When Officer Griffin came into the living room, you didn't tell him that she was coming at you, did you?

A. No; I told you I didn't tell him anything at all.

Q. You didn't tell him that you were fearful for your life and that's why you reached for this frying pan with the scaulding crisco [*sic*] in it and tossed it at this girl?"

Defendant's general objection to the last of this series of questions was sustained by the trial court.

*Doyle* represents a case in which two defendants, Doyle and Wood, were advised of their right to remain silent in line with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. At their trials, each defendant took the stand and gave an exculpatory story which had not previously been told to the prosecution or police. Over counsel's objection, defendants were cross-examined as to why they had not given the arresting officer the exculpatory explanations. In reversing defendant's convictions, the United States Supreme Court held that the use for impeachment purposes of defendants' silence, at the time of their arrest

and after they had received *Miranda* warnings, violated the due process clause of the fourteenth amendment. The rationale for the Court's decision was that the silence following such warnings would be "insolubly ambiguous"; moreover, it would be fundamentally unfair to allow an arrestee's silence to be used to impeach an explanation subsequently offered at trial after he had been impliedly assured, via the *Miranda* warnings, that his silence would carry no penalty.

■■ The instant case is distinguishable from *Doyle* in several respects. First, in *Doyle*, defense counsel made timely objections to the prosecutor's questions. No such objections were made in the case *sub judice*. On numerous occasions and without apparent defense objection, the jury was apprised of defendant's failure to inform the officer who arrived on the scene that Massey's injuries had been accidental or inflicted in self-defense. Nor did defendant see fit to raise the matter in her written post-trial motion. Consequently, defendant has failed to preserve this issue for review. *People v. Lewis* (1977), 51 Ill. App. 3d 109, 366 N.E.2d 446; *cf. People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295.

■■ Secondly, neither the factual posture or rationale of *Doyle* are applicable to the case at bar. In the instant case, evidence was adduced to establish that defendant did not maintain post-arrest silence and, hence, no impeachment was effected similar to that in *Doyle*. Although defendant suggests on appeal that this case presents a question of the possible infringement of an accused's right to remain silent, our review of the record establishes that defendant testified that she spoke to Officer Griffin at the stationhouse and told him the "same things" that she told the jury. Defendant by her own admission did not maintain post-arrest silence, nor did she give her exculpatory explanation for the first time at trial as did the defendants in *Doyle*.

Moreover, even if defendant did remain silent at the scene, the record fails to establish that this silence was in any way based upon a reliance of her rights under *Miranda*. Indeed, defendant's silence at the scene of the incident occurred prior to the time of her arrest. The rationale of *Doyle* in favor of protecting an arrestee's justifiable reliance upon the *Miranda* warnings is inapplicable to the case at bar and the prosecution's line of questioning was not barred by Doyle. See *People v. Clark* (1977), 55 Ill. App. 3d 496, 371 N.E.2d 33; *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.

Defendant next contends that she was prejudiced and deprived of a fair trial by the introduction of Officer Griffin's rebuttal testimony revealing that defendant made inconsistent and incriminating statements to the arresting officer where such statements were not disclosed to defense counsel prior to trial.

As previously noted, defendant testified that she inadvertently injured Massey while acting in self-defense and that she had informed the officers subsequent to her arrest of the "same things" that she told the jury. In rebuttal, the State adduced the testimony of Officer Griffin to establish that defendant had not informed him that her conduct had been accidental or in self-defense.

On cross-examination by defense counsel, the officer was asked whether defendant had said anything at the police station. Griffin responded that he remembered defendant telling him that she had been talking, had become angry and had thrown grease upon Massey. The latter statements did not appear on any police reports compiled in connection with the case nor was such testimony otherwise elicited prior to trial during the course of preliminary hearing or grand jury testimony. Defense counsel did not promptly object to the officer's response. However, when court reconvened the following day, defense counsel explained that his failure was induced by "shock" and belatedly moved that the officer's rebuttal testimony be stricken inasmuch as counsel had not been provided with information regarding the statements prior to trial.

The goal of pretrial discovery in both civil and criminal cases is to promote the fact-finding process and to eliminate the tactical advantage of surprise by either side. (*People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274.) The prosecution is required to disclose any and all statements known to it which have been made by defendant even though the statements were not witnessed by law enforcement personnel. (*People v. Watkins* (1975), 34 Ill. App. 3d 369, 340 N.E.2d 92.) In *People v. Musgray* (1976), 37 Ill. App. 3d 48, 344 N.E.2d 708, it was held that the State bears a duty to disclose oral statement attributed to the defendant by police personnel under circumstances similar to the case at bar. In *Musgray*, as in the instant case, the statement in question was inconsistent with the defendant's testimony at trial. Upon a prompt objection, the trial court should have stricken the testimony and instructed the jury to disregard. *People v. Musgray.*

■■ There can be no dispute that the statement in question was in the possession of an agent of the prosecution and defense counsel should have been provided with the statement prior to trial. (Ill. Rev. Stat. 1973, ch. 110A, par. 412(a)(ii); *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593.) Indeed, the substance of the statement directly contradicts defendant's testimony at trial and its impact upon the jury cannot be doubted. Our review of the record fails to satisfy us that the error complained of was harmless.

In view of our disposition of this appeal we need not address ourselves to defendant's remaining contention.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded.

Reversed and remanded.

DOWNING, P. J., and PUSATERI, J., concur.