JAMES WILLIAMS ET AL. V. STATE OF NEBRASKA.

FILED JUNE 3, 1897.    No. 9052.

1. **Robbery: EVIDENCE.** The prisoners, three in number, conspired to unlawfully extort money from the prosecuting witness, pursuant to which one of them, falsely pretending to be an officer, took the prosecutor into custody for an alleged misdemeanor, and demanded money, at the same time taking hold of the prosecutor by the collar, whereupon the latter took out of his pocket and delivered to his assailants the sum of $20, being at said time so frightened that he did not realize what he was doing. *Held,* Sufficient to sustain a conviction for robbery by putting in fear.

2. ———: ———. Evidence of certain collateral facts examined, and *held* inadmissible to support the charge of robbery.

· ERROR to the district court for Douglas county. Tried below before BAKER, J.   *Reversed.*

*Albert S. Ritchie* and *Charles F. Tuttle,* for plaintiffs in error.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General, contra.*

Post, C. J.

Plaintiffs in error were by the district court for Douglas county convicted of the crime of robbery and sentenced to a term in the penitentiary, from which judgment they prosecute error to this court.

The first assignment of the petition in error relates to the sufficiency of the evidence to sustain the judgment. Among the facts which the state's evidence tends to establish are the following: On the 20th day of September, 1896, Thomas Thompson, a young man whose home was in Furnas county, in this state, arrived at the Union depot in the city of Omaha, where, while waiting for a delayed train, he was accosted by Stone, one of the defendants, and asked to take a walk in company with him, Stone. Having accepted the invitation, he proceeded with said defendant to what is described as the high school grounds, where the latter picked up a small padlock, remarking, "See what a curiosity I have found." At that point Wharton, another of the defendants, appeared and was soon engaged in a bet with Stone, the subject of their wager being the ability of the latter to open said lock without a key. Wharton, it seems, succeeded in opening the lock without difficulty, upon which he demanded and received from Thompson, who had consented to act as stakeholder, the sum of $10, being the amount of money wagered. At that time Williams, the third defendant, appeared upon the scene, representing himself as a police officer and accusing Thompson and his companions, Stone and Wharton, of violating the statute, or ordinance of the city against gambling. The further transactions of the party are thus briefly narrated by Thompson in his testimony: "Just then Williams stepped up and says, 'Gentlemen, what is the matter?' Wharton says, 'These two gentlemen (meaning Stone and I) are trying to rob me out of my money,' and Williams unbuttoned his coat and showed a police star and says, 'Gentlemen, I am an officer,' and walked up to

I and Stone and says, 'You are under arrest.' He led us up to the side of the building and says, 'Now, gentlemen; if you have robbed this fellow out of his money just fork that money up right away. I will take you to the police station any way.' So Mr. Stone commenced to plead, and said he didn't mean to cheat him out of his money. Williams says, 'I know such fellows as you. Just fork it up.' And Stone handed out some pocket-books and stuff and gave them to Williams, and then Williams asked me to give my money up. I told him I didn't have any. 'Well, give it up,' he says, and I took out my pocket-book with $2.82 and he took out of that $2.75 and held the pocket-book a while and held me by the shoulder. He was holding his hand on my shoulder when he spoke the first time, and the second time he shook me a little and said, 'You have got more money than that; fork it out.' I was getting scared and did not obey right away. He said something more, and I reached my hand in my pocket and took out $20 in greenbacks that I gave him. Then he says, 'Is that all?' I says, 'Yes, that is all.' So I commenced to plead that he would let my sister know if he was going to take me to the station; that my sister was at the depot, * *. * and he gave me back my pocket-book with five cents and two pennies, and he says, 'You go down to the depot and stay until I come there. I will take these other gentlemen to the police station.' * * *

"Q. Why did you give the $20 to him at last?

"A. I was so scared I did not hardly realize what I was doing."

That the defendants were confidence men, engaged in a conspiracy to swindle Thompson they frankly admit. They further admit that their victim may have been induced to part with his money through fear of the threatened prosecution. The sufficiency of the foregoing evidence to warrant a conviction of the particular crime charged is, however, denied,—a question to which attention will now be directed.

Robbery is, by section 13, Criminal Code, thus defined: "If any person shall forcibly and by violence, or by putting in fear, take from the person of another any money or other personal property of any value whatever, with intent to rob or steal, every person so offending shall be deemed guilty of robbery and, upon conviction thereof, shall be imprisoned in the penitentiary not more than fifteen years and not less than three years." It is said that "The fear of injury to the person is that which is commonly excited on the commission of this offense, and where property is obtained by this means, it will amount to robbery, though there be no great degree of terror or affright in the party robbed. * * * And it is not necessary that actual fear should be strictly and precisely proved, as the law *in odium spoliatoris* will presume fear where there appears to be a just ground for it." (2 Russell, Crimes, 113*; *Long v. State*, 12 Ga., 293.) In *State v. Carr*, 43 Ia., 418, it was held not essential to the crime of robbery by the means here charged that the violence used be such as to put in fear a man experienced in the ways of the world. And in the instruction therein approved it was said that if the defendants took hold of the prosecuting witness, "and this was calculated to put such a man as he in fear, by means of which the robbery was effected, this is sufficient." The statement of the injured party, a youth evidently inexperienced and unsuspecting, that he was induced to part with his money through fear, being "so scared," as he says, that he did not realize what he was doing, and while one of the defendants was holding him by the shoulder, without doubt tends to support the charge of robbery by putting in fear, and is sufficient to sustain the judgment of conviction. It is argued that robbery was not the purpose of the conspiracy, and that the defendants Stone and Wharton are accordingly not answerable for the act of Williams in extorting the money from the prosecuting witness. Whatever may have been the original purpose of defendants, it is clear that all were present, apparently aid-

ing and abetting in the commission of the act charged, and may be said to be jointly chargeable therewith.

The state was permitted, over the objection of defendants, to prove the finding in their rooms, in a distant part of the city, of certain blank checks upon banks in different parts of the country, a large revolver, a "flash roll," and other instruments suggestive of the confidence man. It was claimed for such checks and the "flash roll" that they tended to prove a unity of purpose on the part of the defendants and were admissible as evidence of a conspiracy by them, while the theory upon which the revolver was received in evidence does not appear. The attorney general has not, we observe, assumed to defend the ruling here assailed, and we are satisfied that it is indefensible, both upon reason and authority. The rule, says Mr. Greenleaf, "excludes all evidence of collateral facts or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute." (1 Greenleaf, Evidence, sec. 52.) The fact that the defendants jointly owned a revolver which was, at the time of the assault, in their room several blocks distant tends in no degree to characterize the transaction in question either as respects the force employed in order to effectuate their purpose, or the extent to which the prosecuting witness was actuated by fear in the surrender of his money. It may be said, too, of the other articles mentioned that, although they tend strongly to prove a purpose to defraud, they shed no light upon the real question at issue, and their admission in evidence was presumptively prejudicial to the rights of the accused. For the error here pointed out the judgment is reversed and the cause remanded.

REVERSED.