[No. 6468. Decided November 9, 1906.]

# THE STATE OF WASHINGTON, *Respondent*, v. EDGAR PARSONS et al., *Appellants*.[1]

ROBBERY—FORCE AND PUTTING IN FEAR—IMPERSONATING OFFICERS. There is sufficient element of force and putting in fear to constitute the crime of robbery, where the prosecuting witness, while drunk, was forcibly conducted to a saloon under the pretext that he was under arrest and must be searched, and that the defendants were officers, who were about to lock him up, and who thereupon forcibly took his money when no one else was present, under commands to keep silent.

SAME—INSTRUCTIONS AS TO DEGREE OF FORCE. Upon a prosecution for robbery it is proper to instruct that the degree of force is immaterial if it was sufficient to compel the prosecuting witness to part with his money.

CRIMINAL LAW—TRIAL—INSTRUCTIONS AS TO LESSER DEGREES—REQUESTS. Error cannot be predicated upon the failure of the court to instruct the jury as to lesser offenses included in the charge, in the absence of specific requests therefor.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered June 27, 1906, upon a trial and conviction of the crime of robbery. Affirmed.

*W. H. Abel* and *E. A. Philbrick*, for appellants.

*E. E. Boner*, for respondent.

FULLERTON, J.—The appellants were convicted on an information charging them with robbery, and appeal from the judgment and sentence pronounced upon them. The acts constituting the offense charged took place at Hoquiam on the morning of February 14, 1906, between the hours of twelve and two o'clock. The evidence on the part of the state tended to show that the prosecuting witness, sometime between those hours, entered a restaurant at that place and ordered a meal. He had been drinking the night be-

[1]Reported in 87 Pac. 349.

fore, and had not as yet fully recovered from its effects.
While his meal was being prepared, he leaned over the
counter at which he was sitting and went to sleep. When
the meal was ready he was awakened by the waiter, and be-
gan eating, but seemingly did not become fully awake and
gradually dosed off to sleep again. The appellants came into
the room in the meantime, ordered a meal, and while eating
it, jested with the waiter and restaurant cook over the prose-
cuting witness' condition. After they had finished, one of
them turned to the cook to settle for their meal, when the
other took the witness by the shoulder and aroused him tell-
ing him that he must pay for his meal and get out of doors
as that place was not a lodging house. The witness then
paid for his meal, when the appellant, still holding him by the
shoulder, led him out of the door of the restaurant and there
told him that he and his companion were policemen, and were
going to take him to jail for being drunk.

The other appellant, who had remained talking with the
cook until this time, then joined them and the two took the
witness down an alleyway into a saloon, where they told him
to sit down. No one was in the saloon at the time except
the bartender. After seating the witness in a chair, the ap-
pellants approached the bartender and held with him a
whispered conversation, whereupon he took some keys from
a hook and went out into a room a short distance away.
While the bartender was out of sight, the appellants again
took hold of the witness raised him up and told him he must
now go to jail, and that it was necessary to search him be-
fore going. They thereupon went through his pockets,
taking from him such money as he had, some $28, and then
led him back through the alleyway to the main street where
they let him go, telling him to go to a certain saloon, and
not let himself be seen on the street until morning. The
witness went to his boarding house, where he announced that
he had been robbed by the night policemen of the town.
His complaint caused an inquiry to be made, which resulted

in the arrest of the appellants within a few hours after-
wards. The witness testified that he made no resistance or
outcry for the reason that he believed the appellants to be
policemen, and would "lick him" if he resisted or made an
outcry; that they told him while searching him that he must
keep still. The prosecuting witness was a Finlander by
birth, who had been in the United States less than four
years, and spoke the English language brokenly.

The statute, 3 Bal. Code, § 7103 (P. C. § 1610), defines
robbery to be the forcible and felonious taking from the
person of another, or from his immediate presence, any article
of value by violence or putting in fear, and it is contended
by the appellants that the evidence here fails to show such
use of force and violence, or such putting in fear, in taking
the property as is necessary to constitute robbery under the
statute.

The courts generally hold that it is not robbery to merely
snatch from the hand or person of another, or to surrepti-
tiously take from another's pocket, money or some other
thing of value, as such taking lacks the element of force,
or putting in fear, one or the other of which being essential
to constitute the crime of robbery. It is also generally held
that, where the property is obtained by some artifice or
trick, intended to and which does allay resistance and not
arouse fear, such as inducing one to part voluntarily with
his money or property under the belief that the taker has a
lawful right to it, does not constitute robbery. But, on the
other hand, it is generally held that whenever the elements
of force or putting in fear enters into the taking, and is
the cause that induces the owner of the property to part
with it, the taking is robbery, no matter how slight the act
of force or the cause creating the fear may be, nor by what
other circumstance the taking may be accompanied. It is
enough that the force, or the putting in fear employed, is
sufficient to overcome resistance on the part of the person

from whom the property is taken and is the moving cause inducing him to part unwillingly with his property.

It seems, to us that there was in the case before us both the element of force and putting in fear. There was a forcible seizure of the prosecuting witness, his forcible taking to a place where he had no desire to go, a command to, keep silent, and a forcible taking against his will of his money from his person. True these acts were accompanied by the false representations to the effect that the appellants were officers of the law having authority to compel him to accompany them, and to take from him his property, but these representations did not induce the prosecuting witness to part with his money—they were still compelled to take it from him. Nor was the mere false impersonation sufficient to enable them to thus obtain the property of the prosecuting witness; they were compelled to exercise their assumed authority by such threats of violence as to put him in fear. It may be that a man of more intelligence and resolution than the witness exhibited would have seen through the very flimsy pretexts the appellants were making, and would have successfully resisted such an attempt as was here successful. But this is beside the question. The law must protect the weak and irresolute as well as those of stronger wills, and it is enough that the person assaulted was intimidated and yielded up his property because of the force used and threatened, be the same ever so slight.

The courts usually hold it robbery to obtain the property of another by means of the ruse used by the appellants in this instance. In *McCormick v. State*, 26 Tex. App. 678, the proof showed that the defendant met the prosecutor at night, and summoned him to throw up his hands, stating at the same time that he was an officer of the law and would arrest the prosecutor for being drunk and noisy. On the prosecutor's yielding to him he took from him a roll of bills. This was held to constitute robbery. In *Williams v. State*, 51 Neb. 711, 71 N. W. 729, defendants, three in num-

ber, conspired to unlawfully extort money from the prosecuting witness, pursuant to which one of them, falsely pretending to be an officer, took the prosecutor into custody for an alleged misdemeanor, and demanded money, at the same time taking hold of the prosecutor's collar. The prosecutor thereupon handed him twenty dollars, because, as he testified, he was so scared he did not know what he was doing. This money was immediately handed by the person receiving it to his associates. It was held that all three of the persons were guilty of robbery by putting in fear. In *Bussey v. State*, 71 Ga. 100, 51 Am. St. 256, the facts were that the defendant, who pretended to be marshal of the town, having on a star designating the office, seized the prosecutor, to whom another was showing a trick at cards, and upon the exclamation of that other, "there's the marshal," pushed him against the wall and threatened to put him in jail unless he paid money. The prosecutor, to keep from going to jail, and because he "did not want to be bothered," paid him eight dollars. This was held robbery. See, also, *Sweat v. State*, 90 Ga. 315, 17 S. E. 273; *Thompson v. State*, 61 Neb. 210, 85 N. W. 62, 87 Am. St. 453; *Seymour v. State*, 15 Ind. 288.

The appellant has cited cases which maintain that it is not robbery to obtain the property of another by artifice or trick, or by falsely impersonating a police officer, where no element of force or putting in fear enters into the taking, and it may be that one or two of the cases so cited cannot be distinguished in their facts from the facts of the cases above cited or the facts in the case at bar. But we think the better rule is with the cases we have cited.

There was no error in the charge of the court to the effect that the degree of force used was immaterial, as long as it was sufficient to compel the prosecuting witness to part with his property; nor was it error for the court to refuse to give, as part of his charge, the requested instructions submitted by the appellants. These, in so far as they were proper, were substantially included in the charge given.

Finally, it is urged that the court erred in failing to charge the jury on its own motion as to the lesser offenses included in the offense charged in the information. It is conceded that no request was made to the court to give such an instruction as part of his charge, and that no exception was taken because such an instruction was not made a part of the charge. There are well considered cases which sustain the appellants' contention, but we think the weight of authority is the other way. See, also, 11 Ency. Plead. & Prac., 217; 12 Cyc. 639, 640.

Mr. Thompson states the rule in the following language:

"It is, then, a general rule of procedure, subject, in this country, to a few statutory innovations, that, mere *nondirection*, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. A party cannot, by merely excepting to a charge, make it the foundation for an assignment of error, that it is indefinite or incomplete. The rule rests upon the soundest foundation. The facts of the case come to the mind of the judge as matters of first impression, and it will often be extremely difficult for him, in the short time allowed for a trial before a jury, and in the midst of such a trial, to prepare a series of instructions applicable to all the hypotheses presented by the evidence. On the other hand, counsel are presumed to have studied their case beforehand; to come to the court with a fair understanding of the facts which will probably be proved, and with a full knowledge of the law applicable to those facts. It is therefore, their duty to give attention to the charge of the judge, and if, in their opinion, it omits to give direction as to the law applicable to any essential feature of the evidence, to call his attention to the omission and to request appropriate suppletory instructions; and where they fail thus to call his attention to something which he may fairly be supposed to have omitted from inadvertence, they ought not to be allowed to complain of the omission in an appellate court. A rule which would allow them to do so would be extremely inconvenient. It would multiply new trials and reversals, and often on grounds which have no

connection whatever with the merits." Thompson, Trials, § 2341.

The judgment is affirmed.

MOUNT, C. J., RUDKIN, HADLEY, DUNBAR, ROOT, and CROW, JJ., concur.