STATE of Missouri, Respondent.

v.

Michael S. IDE, Appellant.

Michael Shawn IDE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 49126, WD 52252.

Missouri Court of Appeals, Western District.

Sept. 17, 1996.

As Modified Sept. 17, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 1996.

Application to Transfer Denied Dec. 17, 1996.

Judith C. LaRose, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, for Respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LOWENSTEIN, Judge.

By Information, Ide was charged with one count of first degree robbery, a class A felony, § 569.020, RSMo 1994, for forcibly stealing money with a deadly weapon from a Mico gas station in St. Joseph in March, 1992, and one count of second degree robbery, a class B felony, § 569.030, RSMo 1994, for a February, 1992 incident at a Marcum's station. A jury found him guilty on both charges, recommending sentences of five years on the second degree count and ten years on the first degree charge. The sentences were ordered to run consecutive to each other.

Consolidated with the direct appeal is an appeal involving the adverse result in Ide's Rule 29.15 request for post conviction relief.

Ide's direct appeal has one point and is directed only at the February, second degree robbery conviction of the Marcum station. Specifically, he argues the state did not make a case by failing to satisfy the element of use of force when he stole money posing as a police officer. This is an issue of first impression in Missouri. Section 569.030 states: "A person commits the crime of robbery in the second degree when he forcibly steals property." A definition of forcibly steals is contained in § 569.010(1) "... a person 'forcibly steals,' and thereby commits robbery when, in the course of stealing ... he uses or threatens the immediate use of physical force upon another person for the purpose of: (a) preventing or overcoming resistance to the taking of the property ... or (b) Compelling the owner of such property ... to deliver up the property or to engage in other conduct which aides in the commission of the theft."

On a Sunday afternoon in February of 1992, Ide approached the attendant of a self-service gas station. Wearing a suit and dark glasses, he walked up to the attendant and her friend and flashed a badge. The attendant believed Ide was a police officer. Ide told the attendant he needed to talk to her as soon as a customer left. Ide then announced "there was a possible bomb threat." The attendant was told to turn off the gas pumps. Meanwhile, after Ide spoke into a walkie talkie, he told the attendant to go outside and move her car, because it might "block his unit" from entering the station. The attendant said she would have to lock the door to the station when she moved the car, but he told her he needed to stay in the station, "just in case his unit tried to call." When she came back from moving her car, the money in her purse was gone, along with all the twenty, ten and five dollar bills from the cash register. Also gone was Ide. The attendant and her friend made positive identification of Ide as the man who had posed as a police officer. The case was submitted solely on second degree robbery.

Ide's point on appeal is simple and represents a question of first impression to the

court: does the accused's conduct fit within the statutory definition of "forcibly steals"; i.e., "threatens the immediate use of physical force" (necessary under § 569.010(1) for a second degree robbery conviction), when the defendant, posing as a peace officer, further deceives the victim by telling the victim to momentarily leave the premises to perform a task necessitated by the existence of a fictitious bomb threat?

■ Before beginning a construction and interpretation of the statutes on second degree robbery, it is necessary to appreciate that the crime of stealing, § 570.030.1, carrying a lesser penalty than second degree robbery, prohibits the appropriation, with the purpose to deprive the property of another, without consent or by means of deceit or coercion. The term "deceit", is defined in the definition portion of Section 570.010(6), "means purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact...." *State v. Davis*, 675 S.W.2d 652, 655 (Mo.App.1984). Second degree robbery is made the greater offense of stealing by adding the element of "forcibly steals", to the crime of stealing. *State v. Clay*, 697 S.W.2d 249 (Mo.App.1985). In fact, the Comment to 1973 Missouri Proposed Code reads: "Robbery in the second degree merely proscribes all other forcible thefts which do not amount to first degree robbery." This section is essentially the same as § 160.05 of the New York Penal Code. The idea is to increase the penalty for stealing when accomplished by the element of force, or the threat of force. *Id. State v. Viviano*, 882 S.W.2d 748, 752 (Mo.App.1994).

A person commits robbery in the first degree, § 569.020, "... when he forcibly steals property and in the course thereof he ... (for example), (1) Causes serious physical injury to any person; or (2) Is armed with a deadly weapon...."

■ "This case involves construction of a criminal statute, which must be strictly construed against the state." *State v. Hobokin*, 768 S.W.2d 76, 77 (Mo. banc 1989). "If there is a fair doubt whether the act charged and proved is embraced within the prohibition, that doubt must be resolved in favor of

the accused." *State v. Fredrickson*, 689 S.W.2d 58, 61 (Mo.App.1984). Interpretation of words in a statute are given their plain and ordinary meaning. *Alford v. State*, 895 S.W.2d 143, 145 (Mo.App.1995). "A criminal law will not be interpreted as embracing any but those acts ... clearly described in the statute both within the letter and spirit of the law." *State v. Jones*, 899 S.W.2d 126, 127 (Mo.App.1995). When the criminal laws extend the severity of punishment for certain acts, the courts will be hesitant to extend punishment beyond what the legislature has expressly stated. *State v. Treadway*, 558 S.W.2d 646, 653 (Mo. banc 1977), cert. denied 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135; *State v. Stewart*, 832 S.W.2d 911, 913 (Mo. banc 1992).

No cases from this state nor elsewhere have been cited to the court for the proposition that the threat of physical force necessary for second degree robbery can be communicated by the accused, but the force or threat of force need not be exerted by or directly from the accused. Truly, the notion, not strictly stated in our criminal statutes, is that the actor, the defendant, himself or herself must, threaten, and be the source of the physical force necessary to cause the victim to give up the property. This notion is borne out in *State v. Foster*, 665 S.W.2d 348, 351 (Mo.App.1984), where the opinion spoke of a second degree robbery being accomplished without assault, "by putting the victim in fear of personal injury even when there is no actual possibility of it, as where *the robber* flourishes a harmless imitation pistol...." (Emphasis added).

The state's brief valiantly attempts to show a literal reading of our statutes on second degree robbery allows a conclusion of the actor-defendant's liability under this felony by merely *relating to the victim certain incorrect information* (a la Chicken Little). The state's brief also makes much of the policeman's ruse. However, Ide's masquerading as a St. Joseph policeman is not dispositive of the ultimate issue on second degree robbery. Cases from here and other jurisdictions where such a ruse was used by the defendant, as to robbery first or second, pivot on the defendant, in addition to por-

traying the power of the proclaimed position, using, displaying or threatening physical force.

In *State v. Balch*, 136 Mo. 103, 37 S.W. 808 (1896), the defendant posing as a policeman rousted a couple lying on the ground in Forest Park. Balch drew a revolver, said the couple was under arrest for loitering and demanded money, but accepted the man's watch instead. 37 S.W. at 809. The court affirmed a first degree robbery conviction.

In *People v. Lomba*, 183 A.D.2d 672, 584 N.Y.S.2d 61, 62 (App.Div.1992), a first degree robbery charge was upheld where the defendant, impersonating an officer stopped a motorist. The court rejected the argument that the taking was simply accomplished by a ruse, when facts indicated the victim was "subjected to aggressive and sharp commands," and the victim's companion was "subjected to significant physical contact."

*Montsdoca v. State*, 84 Fla. 82, 93 So. 157, 158–60 (1922) involved a prosecution under then Florida equivalent of Missouri's second degree robbery law. (The Florida law was since amended, *Bell v. State*, 354 So.2d 1266–7 (Fla.App., 1978)). The defendant, armed with a gun, and posing as a policeman, pulled over the victim, threatened the victim with prosecution, took his car keys, grabbed the victim by the shoulders and ordered him out of the car, then demanded money and received $60. Finding that defendant caused victim to give up money due to fear induced by the defendant, the court upheld the jury verdict.

In *State v. Parsons*, 44 Wash. 299, 87 P. 349 (1906), the defendant and a cohort, posing as policemen, rousted a sleepy and hungover patron out of a diner-saloon. The victim's money was forcibly taken from him. 87 P. at 350. In upholding the submission and conviction for forcible robbery, the court noted: "True, these acts were accompanied by the false representations to the effect that the appellants were officers of the law having authority to compel him to accompany them and to take from him his property, but these representations did not induce the prosecuting wit-

ness to part with his money. They were still compelled to take it from him. Nor was the mere false impersonation sufficient to enable them to thus obtain the property of the prosecuting witness. They were compelled to exercise their assumed authority by such threats of violence as to put him in fear." *Id.* at 350.

In *State v. Bell*, 228 N.C. 659, 46 S.E.2d 834 (1948), Bell, the defendant, wearing police style clothing and armed with a pistol, threatened an arrest for speeding, while another defendant waited in the chase vehicle with what appeared to be a sawed-off shotgun. 46 S.E.2d at 836. Bell waved his gun at the victim and demanded cash to pay for a fine. The defendants argued the victim gave up the money only because he fell for the policeman ruse and to avoid the threat of prosecution. The Court, quoting from Montsdoca, said the defendants, in addition to posing as officers, "enforced their demands ... for the money in question by the use of physical force and by threats to inflict bodily injury ..." *Id.* at 837. "If a person takes personal property ... by physical force or by threats of bodily injury, he commits robbery, notwithstanding his taking of the property may be accompanied by a pretense that he is an officer of the law ..." *Id.*

■ The cases discussed above illustrate that the defendant's mere impersonation of a police officer, will not alone justify a conviction for second degree robbery. *State v. Cantrell*, 290 Mo. 232, 234 S.W. 800 (1921) was an appeal for robbery by force of a watch in a bar. The robbery was effectuated by the ruse that one of the men had a gun, and in a jostling the defendant picked the victim's pocket and stole a watch. In reversing the conviction, and holding there should have been only a submission for larceny, our Supreme Court said, "It is not robbery to obtain property from another without violence, by artifice and trickery or by the use of only sufficient force to remove the property from his pocket." 234 S.W. at 802. The Court held the crime was larceny if the jury could have found the property was surreptitiously stolen without the use of force or

violence or putting the victim in fear of personal injury. *Id.*

The police impersonation here aside, the state argues for an appellate ruling that the threat of violence or bodily harm to the victim element of second degree robbery is met by announcement of an impending explosion caused by some third person, not a confederate of the defendant. In the case at bar, the defendant did not make a threat of *his* violence toward the victim, but *also,* and most importantly, there was no threat of any physical force at all made on or toward the attendant. She was merely told to move her car. She did not leave the station to avoid being injured in an immediate bomb blast— she left to move her car to facilitate "a unit" being better able to enter the property. The facts here do not satisfy the language of § 569.010(1) pertaining to use or the threatened immediate use of physical force, so the conviction cannot stand.

Left to another day would be the decision on facts unlike here where the defendant had merely conveyed the information of an impending bomb blast (not his bomb or a bomb under his control) and that bystanders should immediately retreat for their own safety. That scenario would present a closer issue as to the threat of some act on the part of the accused or "caused by the accused," *State v. Vandament,* 299 S.W.2d 532, 535 (Mo.1957), but, the rules of construction of criminal law statutes would seem to reach a conclusion, as here, of only supporting a prosecution for stealing by deceit, § 570.0301, *and State v. Treadway, supra* 558 S.W.2d 646, 653. Again, cases from this state and elsewhere, all pertain to a threat or fear being from the defendant to lay harm on the victim, not where the defendant is just a conduit or a communicator of a threat coming from an independent source. *See People v. Bodkin,* 304 Ill. 124, 136 N.E. 494–5 (1922) ("I knew if I started something Bodkin would kill me"); *People v. Woods,* 41 N.Y.2d 279, 392 N.Y.S.2d 400, 402–03, 360 N.E.2d 1082, 1085 (1977), (defendant ordered woman to give him the money and she did so because she was afraid of him and thought him dangerous).

To reach the result the state proposes, the definition of "forcibly steals," would have to be interpreted to encompass the following— "he threatens or imparts the immediate use of physical force *coming from himself or from independent external sources."* Otherwise, the law as presently written assumes the use or threatened use of physical force comes from or is under the control of the actor. As stated earlier, the policemen's garb is irrelevant to the issue in this case. Ide could just as easily have posed as a utility worker conveying warnings of an explosion or fire to have satisfied the threat of physical force according to the state's theory, and have been convicted of the felony of second degree robbery.

There was no threat of "constructive force," here; i.e., administering poison to render the victim unconscious to facilitate the crime. *State v. Snyder,* 41 Nev. 453, 172 P. 364 (1918); *State v. Sawyer,* 224 N.C. 61, 29 S.E.2d 34 (1944). Neither is this a case of a defendant using a fake or imaginary gun to make a victim feel his or her life was endangered. *See United States v. Brown,* 412 F.2d 381, 382 (8th Cir.1969), where the bank robber, purporting to hold a gun in his pocket, handed a note to a bank teller announcing a "Hode up", but abandoned his effort after being rebuffed by the teller who said 'Show me your gun, you little snot, or get out of here,' was nevertheless convicted.

■ The facts of the first degree robbery count, the Ide of March incident, are now recounted as they relate to Ide's sole point on his Rule 29.15 appeal. The first degree robbery took place and was factually different only to the extent that as Ide left the station carrying the cash register, the attendant returned, and a scuffle ensued. Ide told the attendant he had a gun. A confederate of Ide's did appear with a gun, and Ide escaped. When arrested and questioned by police, Ide broke into tears and said, "What have I done this time". Ide moves to set aside the conviction on the basis of ineffective assistance of counsel for failure to investigate and call his physician who would testify that Ide was suffering from a back condition and could not have been carrying the thirty pound cash register. Suffice it to say, the jury was presented evidence of Ide's back condition. There is no showing Ide can satis-

fy the prejudice prong enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This point is denied.

The judgment on the second degree robbery conviction is reversed and the defendant is ordered discharged on that count. The direct appeal as to the first degree robbery judgment is dismissed for failure to prosecute. The judgment of the motion court on the Rule 29.15 claim is affirmed.

All concur.