COURT OF APPEALS OF VIRGINIA

Present:  Judges McCullough, Huff and Senior Judge Haley
Argued at Chesapeake, Virginia


TYQUAN DEONTA FAGAN
                                                           OPINION BY
v.        Record No. 1184-13-1              JUDGE STEPHEN R. McCULLOUGH
                                                           MAY 20, 2014
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Frederick H. Creekmore, Judge

(Stephen P. Givando, on brief), for appellant.  Appellant submitting
on brief.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Tyquan Deonta Fagan challenges his conviction for robbery.  He argues that the evidence

fails to establish that he took the property of one of the victims by force or threat of violence.  We

disagree and affirm.

BACKGROUND

During the evening of May 29, 2012, five young men, Emmitt Lamar Downing, Melvin

Blackwell, Theodore Winfield, Earl McNair, and Richard Flowers, were traveling in a car in the

City of Chesapeake late at night.  They noticed a flashing blue light in the rearview mirror and

pulled over.  Two men emerged from what first appeared to be a police vehicle and walked toward

the stopped car.  One advanced on the left, appellant on the right.  Appellant tapped on the window

with the handle of a sheathed knife and said "undercover."  He told the men to roll down the

window and to get out of the car.  Both "officers" said "police."  Downing recognized appellant

because they had attended the same high school.  One of the men posing as an officer claimed to be

"Officer Warren." James Quarles and Javon Israel also posed as police officers with appellant. Once outside of the car, Downing noticed that the supposed police vehicle was a Hyundai, a vehicle not commonly used by police departments.

Downing "put two and two together, and [he] figured that [they] were about to get robbed." After all of the men in the stopped vehicle exited the car, the "officers" told the men to place their hands on the trunk of the car. The "officers" then frisked the young men, helping themselves to their cell phones and wallets. The pretend police officers also searched the car, asking if the men had any weapons or drugs in the car. As the "officers" walked back to their vehicle, they told the victims not to move and proceeded to drive away.

McNair testified that he did not know the three accomplices were not real officers until they drove away. He said that he was "just nervous, so [he] was assuming anybody was a police officer." McNair felt "nervous and scared" during the incident.

ANALYSIS

Appellant argues that, with respect to Earl McNair, he can be found guilty of larceny by trick, but not robbery. He points out that McNair did not know that the men who took his property were not police officers until after they had left. He concludes that "[b]y submitting to the authority of someone he believed to be a police officer, McNair was the victim of larceny by trick, not robbery."

On appeal, a reviewing court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original, citation omitted). Instead, we ask only "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at

319) (emphasis in original).  An appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate judges have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).  Furthermore, we draw all reasonable *inferences* in favor of the Commonwealth as part of viewing the evidence in its favor.  See, e.g., Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997).

The threat of violence is what distinguishes larceny from robbery.  Robbery is "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by *violence or intimidation*."  Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968) (emphasis added).  "Threats of violence or bodily harm are not an indispensable ingredient of intimidation.  It is only necessary that the victim actually be put in fear of bodily harm by the willful conduct or words of the accused."  Harris v. Commonwealth, 3 Va. App. 519, 521, 351 S.E.2d 356, 357 (1986) (citation omitted).  The intimidation must be "directed at the person of the victim."  Commonwealth v. Anderson, 278 Va. 419, 425, 683 S.E.2d 536, 539 (2009) (citation omitted).

Persuasive authority from our sister courts in other states parses the distinction between situations where the defendant's force or threats induce the victim to part with property because the victim apprehends danger and situations where the victim willingly parts with the property due to a trick.  For example, in State v. Balch, 37 S.W. 808 (Mo. 1896), the defendant, posing as a police officer, drew a revolver on a couple in a park.  He told the couple they were under arrest for loitering and that they would "have to pay ten dollars or go to the station."  The "officer" accepted the man's watch instead.  Id. at 809.  The Supreme Court of Missouri affirmed the defendant's robbery conviction.  Id. at 809-10.  Similarly, in People v. Lomba, 584 N.Y.S.2d 61 (N.Y. App. Div. 1992), the court upheld a robbery conviction when the defendant, impersonating a police

officer, stopped a motorist. The court reasoned that the victim was "subjected to aggressive and sharp commands" and the victim's companion was "subjected to significant physical contact." Id. at 62. In Montsdoca v. State, 93 So. 157, 158-60 (Fla. 1922), the defendant, while posing as a police officer, pulled over the victim, threatened him with prosecution, took his car keys, grabbed the victim by the shoulders, and ordered him out of the car. He then demanded money and received $60. The court upheld the defendant's robbery conviction. Id. at 159-60. In State v. Bell, 46 S.E.2d 834 (N.C. 1948) (overruled on other grounds by State v. Hurst, 359 S.E.2d 776, 778 (N.C. 1987)), the defendant, while wearing clothing that gave him the appearance of being a police officer, threatened to arrest the defendant for speeding. Meanwhile, his co-defendant waited in the chase vehicle with what appeared to be a sawed-off shotgun. The defendant demanded cash to pay a fine while waving his gun. Id. at 837. The court rejected the defendant's arguments that the victim relinquished the money only because he fell for the police officer ruse and to avoid the threat of prosecution. The court reasoned that, in addition to posing as police officers, the defendants "enforced their demands . . . for the money in question by the use of physical force and by threats to inflict bodily injury." Id. "If a person takes personal property . . . by physical force or by threats of bodily injury, he commits robbery, notwithstanding his taking of the property may be accompanied by a pretense that he is an officer of the law . . . ." Id.; see also State v. Parsons, 87 P. 349 (Wash. 1906) (upholding robbery conviction where defendant, posing as a policeman, forcibly took the hungover victim's money from him).

By contrast, in State v. Ide, 933 S.W.2d 849 (Mo. Ct. App. 1996), the defendant, posing as a police officer, told the attendant of a gas station that she had to leave due to a bomb threat. Id. at 850. He also told her she needed to move her car. When she returned from having moved her car, the money in the cash register and in her purse was gone. Id. The court reversed the robbery

conviction, reasoning that "[t]he police impersonation here aside . . . there was no threat of any physical force at all made on or toward the attendant." Id. at 853.

McNair acknowledged that it was only when the men drove away that he realized that they were not real police officers. But the dispositive question is not whether McNair was taken in by the ruse as to the "officers'" authority. The question is whether the evidence supports the factfinder's conclusion that appellant took McNair's property by intimidation, or appellant's contention that McNair willingly parted with his property due to a ruse. While flanked by another pretend police officer, appellant walked up to the victims' car and tapped on its window with the handle of a sheathed knife – an unmistakable gesture of intimidation. The men were ordered out of the car and told to place their hands on the trunk of the car. McNair testified that he was "nervous and scared" as he submitted to the searches. The evidence does not support a conclusion that McNair willingly parted with his cell phone. To the contrary, a rational factfinder could conclude that appellant engaged in intimidation and by this means took McNair's property.

CONCLUSION

We affirm the decision of the trial court.

Affirmed.