COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Russell and Athey
Argued by teleconference

**UNPUBLISHED**

BENJAMIN DAVID CHASTANG

MEMORANDUM OPINION* BY
v.        Record No. 1285-18-3          JUDGE WESLEY G. RUSSELL, JR.
                                        APRIL 21, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge[1]

Dirk B. Padgett (Dirk Padgett Law PLLC, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


In addition to other charges,[2] a jury found Benjamin David Chastang, appellant, guilty of

three counts of abduction in violation of Code § 18.2-47 and three counts of use of a firearm as a

second or subsequent offense in the commission of abduction in violation of Code § 18.2-53.1.

On appeal, appellant assigns error to the trial court "not granting a motion to strike as to the charges

of abduction and possession of a weapon while committing abduction as the evidence was

insufficient as a matter of law." Specifically, appellant asserts that the trial court erred in refusing

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Designate Jonathan M. Apgar presided over the trial of this matter, and thus,
denied the motions to strike made prior to the submission of the case to the jury. Judge Carson
presided over appellant's reconvened sentencing proceeding at which appellant renewed his
challenge to the abduction and related firearm convictions.

[2] The jury also convicted appellant of robbery in violation of Code § 18.2-58; entering a
bank while armed with the intent to commit larceny in violation of Code § 18.2-93; use of a
firearm in the commission of robbery in violation of Code § 18.2-53.1, and wearing a mask in
public in violation of Code § 18.2-144. These convictions are not before us on appeal.

to dismiss the abduction and related firearm charges (collectively "the abduction related charges") because the evidence established that his detention of the victims was inherent in his commission of the underlying robbery, and thus, his actions did not constitute independent offenses. The Commonwealth contends that appellant has failed to preserve this argument for our consideration. For the following reasons, we find that appellant's argument is properly before us and affirm the judgment of the trial court.

BACKGROUND

We review the facts in the light most favorable to the Commonwealth because it was the prevailing party below. Gerald v. Commonwealth, 295 Va. 469, 472 (2018). Accordingly, we discard any of appellant's conflicting evidence and regard as true the credible evidence favorable to the Commonwealth as well as any inferences that can reasonably be drawn from such evidence. Id. at 473.

On the morning of January 30, 2017, Walker Holcomb was working as a teller at BNC Bank in Roanoke and had just received a $7,000 cash deposit from a customer when appellant, wearing a mask and sunglasses, entered the bank. Appellant approached Holcomb with a gun and demanded, "[G]ive me it all, no alarms." Holcomb, who was processing the large cash deposit, surrendered several thousand dollars to appellant. Appellant placed the money in the front of his pants. After taking the money, appellant ordered Holcomb to lie on the ground and "count." Holcomb could not recall the number to which appellant ordered him to count, but he did remember that appellant told him if he "g[o]t up before [reaching the number], I'm going to come back and shoot you, kill you." At no time after he had given the money to appellant did Holcomb attempt to retrieve the money or interfere with appellant's movements.

A short time after appellant left the bank, Holcomb got up from the ground. He was uncertain how long he had remained on the floor but estimated that he could have been there for several minutes. After he got up, Holcomb hit the silent alarm button twice and called 911.

Two other bank employees, Stephanie Hay and Calvin Bannister, were in a side office with a glass wall when appellant entered the bank with the gun. Hay testified that they saw appellant before appellant saw them. She whispered to Bannister to press the silent alarm and believes that the noise they made in trying to do so caused appellant to turn around and notice them. Appellant appeared "startled" and then pointed his gun at Hay and Bannister. Appellant instructed them to put their hands up. As appellant brandished the gun back and forth between Holcomb, Hay, and Bannister, he warned the employees "not to press any alarms" and to "keep [their] hands up." Hay testified that appellant "told us all to get down on the ground . . . [a]nd not to call anyone for five minutes or he would come back and shoot us." "[T]errified" and believing that she was going to die, Hay complied. While she was face down on the floor in the office with Bannister, she was unable to see whether appellant remained in the building.[3]

Hay and Bannister did not leave the side office while appellant was in the bank. Hay and Bannister remained on the floor for approximately three minutes before Hay turned her head toward Bannister and told him that they "needed to lock the doors." After Bannister got up and locked the door, Holcomb and Hay also stood. Pursuant to bank policy, Hay called their supervisor who arrived shortly thereafter.

Officer Brokaw responded to the bank alarm. He testified the "tone" from the bank went out at 10:23 a.m. and he arrived at the bank around 10:27 a.m. At trial, the Commonwealth

---

[3] Hay could not remember whether she pressed the alarm; Bannister, however, recalled that Hay had pressed the button when she first saw appellant. Although the three victims' testimony had inconsistencies on minor points such as this and how much time transpired between various events during and after the robbery, the testimony was largely consistent regarding the substance of the events.

introduced surveillance footage from the bank that depicted appellant approaching Holcomb at 10:17:48 a.m. and leaving the bank at 10:18:37 a.m.

At the conclusion of the Commonwealth's evidence, appellant moved to strike the evidence. He moved to strike "all of the charges" arguing that the evidence was insufficient to establish that he was the criminal agent. He asserted that "there is no direct evidence [that] puts [appellant] in the bank."

He also made an argument that concerned only the abduction related charges. Citing our decision in <u>Hoyt v. Commonwealth</u>, 44 Va. App. 489 (2004), he argued that there was insufficient evidence to support the independent abduction charges. In essence, he argued that any restriction on the victims' freedom of movement was inherent in the robbery, and thus, could not establish abduction as a matter of law. The Commonwealth responded to this argument by asserting that appellant ordering the bank employees to the ground and demanding that they stay there was not a necessary component of robbery. The Commonwealth reasoned that the commands and threats appellant made after having obtained the money were made "to allow [appellant] to get away[,]" and as such, constituted restrictions on movement independent of the robbery.

The trial court denied the motion to strike regarding the issue of identity, finding that "there's enough circumstantial evidence" to create a jury issue regarding whether appellant was the perpetrator.[4] However, the trial court did not immediately rule on the portion of the motion to strike challenging whether any restriction on the victims' freedom of movement was inherent in the robbery. The trial court informed the parties that it was "taking under advisement the abduction [argument] because that's . . . *a question of law*" and the trial court wished to review the caselaw. (Emphasis added). Because the hour was late, the trial court then recessed for the evening.

---

[4] Because appellant does not argue on appeal that he was not the perpetrator, we have not recited the evidence that the Commonwealth offered to establish identity at trial.

When the proceeding resumed the next morning, the trial court, also citing our decision in Hoyt, denied the motion to strike the abduction related charges. In rendering its decision, the trial court concluded that the Commonwealth's evidence, if credited, established that appellant's alleged restriction of the victims' movements was more than what was necessary "to actually perpetrate the robbery[,]" and thus, could constitute independent abductions.

With all arguments he had made in support of his motion to strike now denied, appellant proceeded to put on evidence. At the conclusion of his evidence and before the case was submitted to the jury, appellant renewed his motion to strike. He again argued that the evidence failed to establish that he had been the perpetrator. He also stated, in reference to his earlier argument that any detentions were inherent in the robbery, that he "renew[ed] the [m]otion on the [a]bduction[s]. I know you have previously ruled on that."

The trial judge then engaged in a colloquy with appellant's counsel. The trial court asked appellant to concede that he was not contesting that the Commonwealth had established that the events described by the witnesses had occurred, but rather, was arguing that the evidence did not establish that he was the perpetrator. In doing so, the trial court specifically limited its inquiry to factual issues, prefacing its ultimate question to appellant with the limitation that "the only issue that *the [j]ury has to resolve* is whether identity has been proven beyond a reasonable doubt." (Emphasis added). After appellant responded in the affirmative, the trial court denied the motion finding that the evidence was sufficient to present a jury question on identity.

The jury returned guilty verdicts on all charges, including the charges that are the subject of this appeal, and also rendered its decisions regarding sentencing. The trial court dismissed the jury and continued the sentencing portion of the proceedings to allow for the preparation of a presentence report.

At the reconvened sentencing hearing, the trial court received the presentence report and heard testimony from three witnesses, the probation officer who prepared the presentence report and two bank employees. After the trial court received the evidence, appellant again raised the issue related to the abduction related charges. He noted that he was "renew[ing] the objection . . . made at trial." He argued that "the robbery encompassed whatever limitations of liberty were used[,]" and therefore, any abductions were "encompassed [by] the robbery." He asked the trial court to "dismiss" the abduction related charges.

In response, the Commonwealth expressly addressed what it characterized as appellant's "renewed motion to dismiss the abduction charges." The Commonwealth argued that the restraints on liberty were "unnecessary to complete the robbery" and were designed to allow appellant to escape after the robbery had been completed.

Although not expressly addressing the arguments of the parties, the trial court implicitly rejected appellant's argument by sentencing him on all of the charges, including the abduction related charges. For each offense, the trial court imposed what it characterized as the jury's "recommended" sentence.

Appellant noted an appeal challenging decisions of the trial court regarding a motion to suppress, a motion for a mistrial, and for concluding that the evidence was sufficient to support convictions for "the charges of abduction and possession of a weapon while committing abduction" as opposed to any restriction on liberty having been subsumed within the robbery. We granted him an appeal on the issue of whether the evidence established abductions independent of the robbery.

ANALYSIS

I.  Standard of review

Ordinarily, in reviewing a trial court's denial of a motion to strike, we apply a deferential standard of review.  See Moore v. Commonwealth, 59 Va. App. 795, 804 n.4 (2012) (recognizing that we are required to "uphold the judgment of the trial court [denying a motion to strike] unless it is plainly wrong or without evidence to support it").  We do so because "[w]hether the evidence adduced is sufficient to prove each of [an offense's] elements is a factual finding" that can be set aside only if "it is plainly wrong."  Linnon v. Commonwealth, 287 Va. 92, 98 (2014) (quoting Lawlor v. Commonwealth, 285 Va. 187, 223-24 (2013)).

Although raised as part of his motion to strike, appellant's challenge to the abduction related charges is a variation on the ordinary theme.  He does not challenge that the events occurred or that the evidence establishes that there was a limitation on the victims' liberty; rather, he argues that any such restrictions did not constitute independent abductions but were inherent in the underlying robbery.  In such cases, "whether the detention established by the evidence is 'the kind of restraint which is *an intrinsic element* of crimes such as rape, robbery, and assault,' is a question of law to be determined by the court."  Lawlor, 285 Va. at 229 (quoting Brown v. Commonwealth, 230 Va. 310, 314 (1985)).  Accordingly, the trial court's judgment in this regard is subject to *de novo* review on appeal.  Epps v. Commonwealth, 66 Va. App. 393, 402 (2016) (citing Smith v. Commonwealth, 56 Va. App. 711, 721 (2010)).

II.  Commonwealth's procedural default argument

Before turning to the merits of appellant's argument, we address the Commonwealth's contention that appellant's argument is procedurally defaulted.  The Commonwealth argues that "while it is plain at the end of the Commonwealth's case the defense alleged that the evidence failed to show abduction" as an independent offense, he put on additional evidence and thereafter

"made no claim regarding the legal sufficiency of the evidence to prove abduction[.]" The Commonwealth asserts that this constitutes a waiver of the argument, preventing appellant from "pursu[ing] it on appeal." We disagree.

As noted above, appellant did renew his argument that the evidence did not establish independent abductions at the close of all of the evidence. His counsel explicitly stated that "we . . . renew the [m]otion on the [a]bduction[s]. I know you have previously ruled on that." Although it would have been preferable for counsel also to restate his reasons, this statement was sufficient in this case because appellant had raised only one abduction specific argument, namely that any restrictions on liberty were inherent in the robbery, and thus, did not constitute independent abductions.

The Commonwealth contends that, despite having made this statement, appellant waived the argument when, in response to a question from the trial court, he "agreed that the only issue for the jury to decide was identity." Although appellant agreed when the trial court asked if "the only issue that *the [j]ury has to resolve* is whether identity has been proven beyond a reasonable doubt[,]" his agreement did not waive his argument that the evidence did not establish independent abductions. (Emphasis added).

As the trial court noted when it first heard appellant's argument, the question of whether the limitations on liberty in this case were inherent in the underlying robbery or constituted independent abductions is not a question for the jury, but rather, is "*a question of law*[.]" (Emphasis added). Virginia's appellate courts repeatedly have held that such a determination is for the trial court to resolve and is not a question to be submitted to the jury. See, e.g., Lawlor, 285 Va. at 229; Vay v. Commonwealth, 67 Va. App. 236, 255 (2017). It should go without saying that appellant's concession that the only question for the *jury* to decide was identity did not waive his challenge

- 8 -

on an issue that is committed not to the jury, but to another decisionmaker, the trial court. Accordingly, the Commonwealth's waiver argument is without merit.

Moreover, appellant raised the argument a third time at the reconvened sentencing proceeding, where he expressly asked the trial court to "dismiss" the abduction related charges because "the robbery encompassed whatever limitations of liberty were used[,]" and therefore, any abductions were "encompassed [by] the robbery." In doing so, appellant effectively asked the trial court to set aside the verdicts of guilt on the abduction related charges. As the Supreme Court has recognized, such a motion to set aside a verdict can be sufficient to preserve appellate arguments encapsulated by the motion. See, e.g., Commonwealth v. Bass, 292 Va. 19, 33 (2016).

Here, appellant argued on multiple occasions in the trial court that any restriction on liberty was inherent in the underlying robbery. He never waived or abandoned that argument, the Commonwealth addressed it, and the trial court rejected it. Thus, the argument was squarely before the trial court, the trial court had a full and fair opportunity to consider the argument, and the trial court did so. Accordingly, the Commonwealth's procedural default argument is without merit, and we now turn to the substance of appellant's appeal.

### III. Abduction as an independent offense

Statutory abduction is defined in Code § 18.2-47. Code § 18.2-47(A) provides that

> [a]ny person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

Standing alone, a criminal ordering his victims to the ground at gunpoint and ordering that they remain there for a specified period of time under penalty of death satisfies all of the elements found in Code § 18.2-47. Appellant, while acknowledging he placed significant

restrictions on the victims' liberty, argues that the detentions and restrictions on liberty he imposed did not stand alone; rather, they were inherent in the underlying robbery.

In enacting "the abduction statute the General Assembly did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense." Brown, 230 Va. at 314; accord Hoyt, 44 Va. App. at 492-93. If the restriction on liberty imposed upon a victim is inherent in one of the listed underlying crimes, there is no violation of the abduction statute. Id. In determining whether a particular restriction on liberty constitutes the independent crime of abduction or is merely inherent in an underlying offense, the "issue . . . is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." Lawlor, 285 Va. at 225.

Accordingly, in this case, we must determine what actions were necessary to complete the robbery and when the robbery ended. To do so, we necessarily turn to the elements of robbery.

The elements of robbery are longstanding and familiar. Robbery requires the taking of the personal property of another, from his person or in his presence, by means of threat, force or intimidation with the intention to permanently deprive the person of that property. See, e.g., Fagan v. Commonwealth, 63 Va. App. 395, 398 (2014); Adeniran v. Commonwealth, 63 Va. App. 617, 624 (2014). The person from whom the property is taken need not own the property but must have a "right of possession [in the property that] is superior to that of the robber." Johnson v. Commonwealth, 215 Va. 495, 496 (1975). Particularly important here, neither escape nor other attempts to avoid detection or capture are elements of robbery. Cf. Haskell v. Commonwealth, 218 Va. 1033, 1043 (1978) (holding that "escape is not an element of the crime of attempted robbery").

Here, appellant unquestionably committed a robbery. Threatening Holcomb with a gun, appellant demanded that Holcomb give him the bank's money. As one of the bank's tellers, Holcomb had a right of possession superior to appellant. Because of appellant's threatening conduct, Holcomb surrendered the money.[5] Appellant evinced his intention to permanently deprive Holcomb of the money through his conduct in general and the specific act of placing the money in the front of his pants. Consequently, as soon as appellant tucked the money into his waistband, all of the elements of robbery had been satisfied and the crime was completed. If appellant had taken no further action and simply had waited for the police to arrive, he would have been guilty of robbery.

Appellant, of course, did take additional action. Having already taken the money, appellant ordered Holcomb, Hay, and Bannister to the floor and commanded them to stay there for a definite period. Appellant argues that this was part of the robbery. We disagree.

Unlike cases in which theft victims have attempted to recover the property that had just been seized by a thief, none of the bank employees made any attempt to repossess the money or otherwise interfere with appellant's movements or continued possession of the money. This distinguishes this case from instances where violence used to subdue victims who attempt to reassert possession or otherwise interfere with the thief's custody of the stolen property has been deemed to be part of a robbery. See, e.g., Commonwealth v. Jones, 267 Va. 284, 290 (2004) (recognizing that violence used against a victim who "interposed himself to prevent the theft"

---

[5] Holcomb's liberty was restricted when appellant pointed the gun at him and demanded the money. This restriction on liberty was inherent in the robbery, and therefore, could not support an independent abduction charge. See Wiggins v. Commonwealth, 47 Va. App. 173, 180 (2005) ("[A]n abduction generally inheres in a robbery because 'there is usually some detention, and often a seizure, of the victim'" to accomplish the taking. (quoting Scott v. Commonwealth, 228 Va. 519, 526 (1984))). The Commonwealth's abduction theory as it relates to Holcomb centers on the restrictions on his liberty that appellant imposed *after* Holcomb had surrendered the money. Accordingly, our analysis focuses on those restrictions.

after the thief had seized the property in question was part of a robbery); <u>Durham v. Commonwealth</u>, 214 Va. 166, 169 (1973) (holding that when an "owner of personal property, or another having custody or constructive possession of the same, interposes himself to prevent a thief from taking the property, and the force and violence used to overcome the opposition to the taking is concurrent or concomitant with the taking, the thief's action constitutes robbery").

Here, with no such interference by the bank employees, appellant achieved complete possession, as opposed to mere custody, of the money when he stuffed it into his pants. Accordingly, his commands to the bank employees to lie on the floor and remain there were extraneous to and not in support of his efforts to take the money, and thus, occurred after the robbery had been completed.

Given that it did not advance his acquisition and continued possession of the stolen money, the purpose behind appellant's commands to the bank employees becomes clear. His orders and threats were made to facilitate his escape and to allow him to avoid detection and capture. As noted above, escape is not an element of robbery. <u>Haskell</u>, 218 Va. at 1043. Additionally, a detention or other restriction on liberty that is designed to assist the perpetrator evade detection as opposed to accomplish an element of the underlying crime is not inherent in the underlying crime, but rather, constitutes an independent abduction. <u>See, e.g.</u>, <u>Vay</u>, 67 Va. App. at 252 (detention and asportation of rape victim that was designed to help perpetrator evade detection represented an independent offense); <u>Bell v. Commonwealth</u>, 22 Va. App. 93, 98 (1996) (same); <u>Coram v. Commonwealth</u>, 3 Va. App. 623, 626 (1987) (holding that "asportation to decrease the possibility of detection is not an act inherent in or necessary to the restraint required in the commission of attempted rape").

Because the commands appellant issued and the threats he made after he obtained unquestioned possession of the money were designed to facilitate his escape and to assist his

evasion of capture and detection, they were not inherent in the underlying robbery.  Accordingly, these actions were sufficient to constitute independent abductions, and the trial court did not err in refusing to strike or dismiss the abduction related charges.[6]

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

---

[6] Appellant's challenge to the firearm charges related to the abductions is premised on there having been no independent abductions.  Accordingly, our conclusion that the evidence established independent abductions is fatal to his challenge to the related firearm charges.