**PUBLISHED**

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **13th** *day of* **May, 2025**.

Diego Claramunt,                                                                                          Appellant,

 against                     Record No. 1731-23-1
                                   Circuit Court No. CR23000384-00

Commonwealth of Virginia,                                                               Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Beales, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins, White, Frucci and Bernhard

On April 22, 2025, the appellee, by the Attorney General of Virginia, filed a petition requesting that the Court set aside the judgment rendered on April 8, 2025, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:     *original order signed by a deputy clerk of the*
        *Court of Appeals of Virginia at the direction*
        *of the Court*

Deputy Clerk

Present:     Judges Causey, Chaney and Callins
Argued by  videoconference

DIEGO CLARAMUNT

v.        Record No. 1731-23-1

OPINION BY
JUDGE VERNIDA R. CHANEY
APRIL 8, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

Rachel A. Glines, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Claramunt challenges his conviction under Code § 16.1-253.2 for violating an emergency

protective order.  He argues that the trial court erroneously concluded that the emergency

protective order remained in effect until its expiration date, even though the court, upon a

hearing, issued a preliminary protective order pursuant to Code § 16.1-253.1.  This Court agrees

and reverses his conviction.

BACKGROUND[1]

Claramunt's wife, Adriane, obtained an emergency protective order from a Chesapeake

magistrate at 11:30 p.m. on May 29, 2022, pursuant to Code § 16.1-253.4.  Claramunt was

served with the emergency protective order on May 30, 2022, at 12:03 a.m.  The emergency

protective order prohibited him from having any contact with his wife or their two children and

---

[1] The facts are stated "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

granted Adriane exclusive possession of the family home in Chesapeake. The emergency protective order stated that it expired at 11:59 p.m. on June 1, 2022.

Because Adriane "wanted more protection," she obtained a preliminary protective order from the Chesapeake juvenile court at 11:07 a.m. on May 31, 2022, pursuant to Code § 16.1-253.1.[2] The preliminary protective order continued to prohibit Claramunt from contacting his wife or going to the family home but allowed him to have "no hostile contact" with his children. It also directed him to maintain the utilities for the residence and gave possession of a vehicle to Adriane. The order stated that a full hearing would be set for June 15, 2022. The order does not indicate that it was personally served on Claramunt, but he learned of it while at the courthouse to obtain a separate preliminary protective order against Adriane. That order was served on her at 11:50 a.m. on May 31, 2022.

Based on the judge's remarks when Claramunt was in court, he believed he was allowed to contact his children and to remove some of his items from the family home. Claramunt took his son from school[3] and then went to the house where he collected his work uniforms, computer, and CPAP machine. They were in the home for about five or six minutes. Neither Claramunt's wife nor daughter was present.

On June 1, 2022, Adriane initiated a complaint against Claramunt for violating the terms of the protective order, which was in effect as of May 31, 2022, by contacting the children and entering their home. At a hearing held in the juvenile court on February 23, 2023, the court found Claramunt guilty and sentenced him to 10 days in jail, with 9 days suspended. Claramunt appealed to the circuit court, which heard the case on September 22, 2023.

---

[2] The court was closed on May 30, 2022, for a holiday.

[3] Claramunt also went to his daughter's school, but she did not leave with him.

- 2 -

Claramunt argued that, since he was specifically charged with violating the emergency protective order and the preliminary protective order superseded it, he was not guilty of that violation. The Commonwealth contended that the preliminary protective order was not in effect on May 31 because it had not been served on Claramunt. However, Claramunt introduced the preliminary protective order as an exhibit and testified about its contents without objection during the hearing. The trial court determined that the emergency protective order had not yet expired and that it did not allow Claramunt to contact his children or access the family home. The court dismissed Claramunt's argument that a juvenile court judge had orally granted him permission, stating, "a court speaks through its orders." The court found Claramunt guilty and sentenced him to five days in jail with four days suspended.

ANALYSIS

Claramunt raises two issues on appeal. He argues that the trial court erred in finding him guilty of violating the emergency protective order because (1) it was no longer in effect after the preliminary protective order was "entered," and (2) he believed he had permission from the juvenile court judge to contact his children and retrieve his belongings from the family home. Issues of statutory interpretation are reviewed de novo. *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022); *Bennett v. Commonwealth*, 60 Va. App. 656, 665 (2012). The "primary objective" of statutory interpretation "is to ascertain and give effect to legislative intent." *Brown v. Commonwealth*, 284 Va. 538, 542 (2012) (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)).

I. The emergency protective order became ineffective once the preliminary protective order became effective.

The purpose of an emergency protective order under Code § 16.1-253.4 is to protect the health or safety of a person whom a judge or magistrate finds is in "probable danger" of being harmed by a family member. Code § 16.1-253.4(B). The order temporarily prohibits contact,

including physical presence, between the protected person and the alleged abuser. *Id.* The order allows the protected person exclusive possession of the family residence and possession of any companion animals. *Id.* The order expires at 11:59 p.m. on the third day after it is issued; however, if the court is not in session, it is extended for an additional 24 hours.[4] Code § 16.1-253.4(C). When issuing an emergency protective order, the magistrate or judge gives the protected person a form to file for a preliminary protective order under Code § 16.1-253.1. *See* Code § 16.1-253.4(C).

The preliminary protective order then provides expanded protections to the petitioner. In addition to the restrictions imposed by an emergency protective order, a preliminary protective order has additional conditions regarding utilities, cellular telephones, electronic devices, and vehicles. *See* Code § 16.1-253.1(A)(4), (5), (6). The order sets a date for a full hearing within 15 days, at which a protective order under Code § 16.1-279.1 1, valid for up to two years, may be entered. *See* Code § 16.1-253.1(B). The hearing date may be extended, if necessary, but the preliminary protective order remains in effect until the hearing. *Id.* Either party may request that the court modify or dissolve the preliminary protective order. *Id.*

Read together, the logical interpretation of these two statutes is that the protected person has 72 hours to obtain a preliminary protective order, ensuring there will be no lapse in protection. However, once a preliminary protective order is issued or becomes effective, the

---

[4] When Code § 16.1-253.4 was first enacted, an emergency protective order expired 24 hours after it was issued. 1991 Va. Acts ch. 715. Later amendments changed the expiration date to 72 hours after issuance or the next day court was in session. *See* 1996 Va. Acts ch. 866; 1998 Va. Acts ch. 684. The purpose of an emergency protective order is to provide immediate protection and safety to the petitioner-victim until a hearing can be held, and the General Assembly intended to set a reasonable amount of time to schedule a hearing. However, the fact that an emergency protective order automatically expires after three days does not mean that it can or should coexist with a subsequently issued preliminary protective order that has different terms.

- 4 -

emergency protective order ceases to have legal effect.[5]  Practically speaking, the preliminary protective order expands the emergency protective order by extending its duration and potentially modifying its conditions.  *Cf.* Code § 8.01-624 (stating that when a temporary injunction is granted, the "court shall prescribe in the injunction order the time during which such injunction shall be effective and at the expiration of that time such injunction shall stand dissolved unless, before the expiration thereof, it be enlarged").

Therefore, as correctly understood, emergency protective orders are intended to be effective until the order statutorily expires or until the court, after a hearing, issues a preliminary protective order.[6]  Emergency orders being rendered ineffective by subsequent orders has been observed in other jurisdictions.  *See Fagan v. Commonwealth*, 63 Va. App. 395, 398 (2014)

---

[5] In 2019, the Attorney General issued an opinion stating that where more than one active protection order involving the same parties existed, with the second order having been issued based on a violation of the first order, both should remain in the Virginia Criminal Information Network and in effect until either is modified or dissolved by the court, terminate under operation of law, or expire by their own terms.  2019 Op. Va. Att'y Gen. 141-43, *available at* https://www.oag.state.va.us/files/AnnualReports/AnnualReports2001-Present/2019_Annual_Report.pdf (last accessed Apr. 7, 2025).  Under this interpretation, should the respondent violate a term of either protective order, the individual may be charged with violating a discrete provision of either order, unless such charges violate double jeopardy.  *Id.* at 143 n.9.  This opinion addresses two of the same type of protective order, distinguishable from this case where the appellant was the subject of an emergency protective order and then a subsequent preliminary protective order.  Further, the Attorney General describes a scenario in which "the second order [is] issued based on a violation of the first order," which is not that case here.  *Id.* at 142.  Therefore, this Court does not find the Attorney General's opinion applicable to these facts.

[6] Moreover, the notion that emergency and preliminary protective orders could provide overlapping bases for a criminal violation raises due process concerns.  If a defendant receives actual notice of the preliminary protective order, yet the emergency protective order remained in effect, he may well not understand that he could be charged with violating *either* order.  *Cf. Johnson v. United States*, 576 U.S. 591, 595 (2015) (recognizing due process violation when the government deprives a person of "life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes"); *United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("It is a fundamental tenet of due process that '[no] one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.' . . . So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." (first alteration in original) (citations omitted) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939))).

(looking to "persuasive authority from our sister courts" for illustrations of the distinction between parting with property "willingly" as opposed to by "force or threat"). In *State v. Sievers*, 2 N.W.3d 568, 575 (Minn. Ct. App. 2024), the Minnesota Court of Appeals held that an emergency protective order was overwritten when the trial court held a hearing on a preliminary protective order. In the course of a criminal proceeding for third-degree sexual misconduct, child-protection workers obtained an ex parte emergency order barring Sievers's contact with his putative victim. *Id.* at 571. Rejecting Sievers's challenge to the trial court's jurisdiction, the Minnesota Court of Appeals held that an "emergency order is temporary, effective only until the juvenile court holds a protective-care hearing." *Id.* at 575 (citing Minn. R. Juv. Prot. P. 41.01, subd. 1(b) (prohibiting the state from holding a child in emergency protective care for more than 72 hours without a hearing and an order for continued protective care)).

In *Bartsch v. Bartsch*, 636 N.W.2d 3, 10 (Iowa 2001), the Iowa Supreme Court held that a subsequently issued permanent protective order mooted a father's challenge to a temporary protective order. There, the trial court issued a temporary protective order limiting father's contact with his child. *Id.* at 5 (citing Iowa Code § 236.4). The mother then got a permanent protective order that did not cover child custody and visitation. *Id.* at 10. The Iowa Supreme Court rejected father's challenge to the temporary protective order regarding child custody and visitation as moot: "[T]he court entered its permanent order, which did not purport to deal with issues of child support or visitation, and at the point the permanent order was entered, the temporary order became ineffective." *Id.*

In the absence of Virginia authority, the Minnesota and Iowa cases provide useful guidance. The statutory regimes of all three jurisdictions extinguish emergency orders after a limited set of days. All three jurisdictions require court intervention before they can be extended. Finally, none of them explicitly provides for the circumstance when emergency and

more-permanent orders overlap. We find that these similarities make the authorities of our sister states persuasive.

## II. The preliminary protective order was in effect at the time Claramunt allegedly violated the emergency protective order.

The Commonwealth argues that the preliminary protective order was not in effect on May 31, 2022, because the order presented at trial did not show that Claramunt had been served with it. Code § 16.1-253.1(C) states that the preliminary protective order "is effective upon personal service on the allegedly abusing person."

First, we note that the text of Code § 16.1-253.1(C) does not mandate that "personal service" is *required* for a preliminary protective order to be effective. It only specifies that the "preliminary order *is* effective upon service on the allegedly abusing person." Code § 16.1-253.1(C) (emphasis added). This is neither a specification that an order is effective *only* upon personal service nor directing service to be made upon an allegedly abusing person. But the statute *does* direct service to the allegedly abusing person in the context of maintaining the Virginia Criminal Information Network database. *See* Code § 16.1-253.1(B). The presence of that command in one subsection and its absence in another is meaningful. *See, e.g.*, *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011) ("[W]hen the General Assembly has used specific language in one instance but omits language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional.").

Our decision in *Tsai v. Commonwealth*, 51 Va. App. 659 (2008), is instructive as showing the possibility of the effectiveness of a protective order despite imperfect service. There, this Court reversed the appellant's conviction of violating a permanent protective order issued under Code § 16.1-279.1. *Tsai*, 51 Va. App. at 650. Violating such an order is a Class 1 misdemeanor; however, the statute does not require a specific mens rea for such a conviction.

*See* Code § 16.1-253.2(A). Meanwhile, the statute *does* mandate that a permanent protective order be served on the defendant. *See* 2006 Va. SB 120 § 1 (reenacting then-current Code § 16.1-279.1(B) ("A copy of the protective order *shall be served* on the respondent and provided to the petitioner as soon as possible." (emphasis added))).[7] Still, this Court observed:

> [I]n order to punish a person for contempt for violation of an order, judgment or decree, it must appear that such order, judgment, or degree has been *personally* served on the one charged, or that he has had *actual* notice of the making of such order or rendition of such judgment or decree.

*Tsai*, 51 Va. App. at 654 (quoting *Calamos v. Commonwealth*, 184 Va. 397, 403 (1945)). Even given this, however, this Court reversed the appellant's conviction because service of a protective order upon the appellant's attorney did not qualify as either "personal service" or "actual notice." *See id.* at 655.

Thus, where the defendant does not put the effectiveness of a preliminary protective order in issue, proof of personal service is not necessary to establish the legal operation of that protective order. *Cf.* Code § 8.01-288 ("Except for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter."). *Personal Service (1), Black's Law Dictionary* 1381 (11th ed. 2019) ("Actual delivery of the notice or process to the person to whom it is directed – Also termed *actual service*."). *Contra Tsai*, 51 Va. App. at 651 ("Appellant moved to strike the evidence on the ground that the Commonwealth failed to prove she had knowledge of the terms of the protective order.").

---

[7] This is the language of the statute as it existed when this Court decided *Tsai*. The service requirement then in Code § 16.1-279.1(B) is largely retained in present Code § 16.1-279.1(C).

We do not hold that Code § 8.01-288 is applicable to all domestic relations matters or governs service of process in all matters outside Title 8.01 of the Virginia Code. Still, when combined with this Court's pronouncement in *Tsai*, we consider Code § 8.01-288 informative for the proposition that there are instances, as here, where imperfect or a strong inference of service of process can establish the legal operation of preliminary protective orders. While this case arises under the juvenile court's jurisdiction as set forth in Title 16.1, nothing in the text of Code § 8.01-288 restricts its operation to cases arising from the circuit court's general jurisdiction.[8]

Therefore, this Court finds, under these facts, that Claramunt had actual notice of the terms of the preliminary protective order and that its service upon him was effective. Claramunt himself introduced the preliminary protective order into evidence, and it was admitted without objection. At trial, Claramunt testified that he was aware of the order when he was in court seeking the preliminary protective order against Adriane and asked a judge for clarification of its terms.[9] He introduced the permanent protective order as an exhibit. Claramunt's son testified that his father told him the new preliminary protective order replaced the emergency protective order. As such, here, (1) the preliminary protective order was admitted into evidence as a

---

[8] We also note that, under Titles 8.01 and 16.1, juvenile and circuit courts have concurrent jurisdiction over many disputes. *See generally* Code §§ 16.1-241, -244 (providing concurrent jurisdiction between JDR courts and circuit courts in certain instances, as well as an appeal process from JDR to the circuit court). In making this observation, we do not pass upon the jurisdictional relationship between circuit courts and courts not of record.

[9] We recognize that the judge's statements concerning the operational effect of the preliminary protective order may not have been admissible for the truth of the matter asserted. That is, the judge's comments may not have been competent to establish the legal effect of the order itself. But those statements would nevertheless have been admissible to establish Claramunt's knowledge of the order or his *subjective belief* as to its operability. *See Jones v. Commonwealth*, 71 Va. App. 597, 604 (2020) ("If a statement is offered for any purpose other than to prove the truth or falsity of the contents of the statement, such as to explain the declarant's conduct or that of the person to whom it was made, it is not objectionable as hearsay." (quoting *Hamm v. Commonwealth*, 16 Va. App. 150, 156 (1993))). At the hearing, Claramunt's counsel explained that the judge's statements were not being offered for the truth of the matter asserted.

defense exhibit, (2) Claramunt testified that he obtained the preliminary protective order while at court, and (3) he testified about its contents at the hearing. On these facts, we are satisfied that the preliminary protective order was properly served upon Claramunt and was in effect at the time Claramunt allegedly violated the emergency protective order.

Claramunt was charged specifically with violating the emergency protective order. However, he could not be guilty of that charge because the emergency protective order was not enforceable once the preliminary protective order took effect, and there was no evidence he violated the emergency protective order before the preliminary protective order superseded it.[10] In *Souter v. Irby*, 593 F. Supp. 3d 270 (E.D. Va. 2022), a tenant obtained an emergency protective order under Code § 19.2-152.8 against her landlord, who then cut off her utilities. The warrant for his arrest incorrectly charged a violation of Code § 16.1-253.4. Because that statute was not related to the emergency protective order, the police erred in arresting the landlord. Similarly, here, the trial court erred in finding Claramunt guilty of violating the emergency protective order.

Because we hold that the trial court erred in finding Claramunt guilty, we need not address his second argument that he believed he could enter the home after speaking with the court. *See Carter v. Commonwealth*, 79 Va. App. 329, 349 n.9 (2023) ("Virginia appellate courts 'strive to decide cases on the "best and narrowest grounds available."'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

---

[10] Appellant's counsel candidly admitted at oral argument that Claramunt had violated the preliminary protective order by going to the family house but argued he had not been charged with violating the preliminary protective order.

CONCLUSION

For these reasons, the conviction is reversed.

*Reversed and dismissed.*